15871

HUGHES *ET AL.* v. SLATER
(39 S. E. (2d), 509)

*Messrs. Zeigler & Brailsford,* and *A. J. Hydrick,* of Orangeburg, for Appellant,

*Mr. C. E. Summers,* of Orangeburg, · for Respondents,

September 6, 1946.

MR. ASSOCIATE JUSTICE TAYLOR delivered the unanimous opinion of the Court.

This appeal comes from Orangeburg County, involving a Decree of the Honorable M. M. Mann. This particular proceeding was begun September 13, 1944, on the Petition of Thelma R. Smith, Hazel C. Gue, and Charles A. Robinson, the Devisees of J. B. Robinson, filed against John D. Slater, Respondent, in the main case of *Jessie C. Hughes, Plaintiff, v. John D. Slater et al., Defendants.* The matter was referred to Honorable John S. Bowman, County Judge as Special Referee, who on April 16, 1945, filed his report

which is reported herewith. Exceptions were taken both to the Report of the Special Referee, and the Decree of Judge Mann by both Respondents and Petitioner.

It appears from the record that on March 21, 1934, pursuant to report of Special Referee B. H. Moss, dated March 13, 1934, a decree of Judgment was granted by Honorable S. W. Shipp in the original action to Jessie C. Hughes for the foreclosure of a mortgage executed by John D. Slater, covering certain real estate, which at the time of the original action was owned by Jessie C. Hughes, Plaintiff in the original action. J. B. Robinson who held a second mortgage executed by Slater was made a party defendant and judgment in foreclosure was given Robinson. Slater filed answer, requiring proof of the allegations of the complaint, but does not appear to have made any reference therein to the allegations of Robinson's answer setting up his second mortgage. No appeal was taken by Slater and no exceptions to the Special Referee's report was filed, although due service of the report was accepted by his attorney of record. The Hughes Judgment was assigned to Robinson, who died testate August 28, 1938, and in the settlement of his estate, petitioners were assigned both judgments. The Petition seeks to have the Court determine the amount due on the Judgment aforesaid, (the decree in the original action having left this item open as being a mere mathematical calculation), and the property described in the Complaint be sold and the proceeds of the sale applied to the Satisfaction of the Judgment debts. The Decree for Judgment of March 21, 1934, as to the Hughes mortgage, provided that the property should not be sold so long as the Defendant Slater paid One Hundred Dollars monthly until the entire amount of accumulated interest should have been paid, and in the meantime Slater paid each month one year's delinquent taxes (of which there were several years outstanding) until all taxes and street assessments were current and not permit any tax as accruing to become delinquent.

When the principal debt was reduced to $10,000.00, Slater was to pay the full amount, with attorney's fees, forthwith, or make some further satisfactory arrangement with the Plaintiff. Default in any of the terms of the provisions related would give the plaintiff the right to sale of the premises upon written application. These provisions were by agreement of Slater's counsel.

As to Robinson's junior mortgage, the decree provided that the property might be sold at any time subsequent to October 1, 1934, upon written application therefor, it not appearing that any agreement or arrangement had been made for its payment, and the Court recognizing that the agreement with respect to the Hughes mortgage did not bind Robinson.

Slater reduced the indebtedness to $10,000.00 in November, 1936, as provided, but failed to pay that remaining balance and instead, entered into a new agreement with Robinson (who, it will be recalled, had in the interim acquired the Hughes Judgment by assignment) on February 4, 1937, whereby the two mortgages were "to run for 6 years at 5%, payable $100.00 the first week of each month". The parties operated under this arrangement until April, 1944. Petitioners now seek a sale of the property as security for both debts, based on the provision of Judge Shipp's decree.

The Respondent Slater seeks in his answer and return to the Petition to amend all proceedings in the case by alleging that he, Slater, had made certain payments on the Robinson mortgage which were not in evidence in the original case. He also denied that any judgment for a specific amount due on the Robinson mortgage was given in the original case. He alleges in his proposed Answer that only a small amount is due on the Robinson Judgment as to which he has proffered payment but that Petitioners have refused acceptance. It is further alleged that the Hughes Judgment is barred by the Statute of Limitations.

The report of the Special Referee and the Decree of Judge Mann refused Slater the right to file Answer and ordered sale of the premises involved to satisfy the debt sued on in the Robinson Judgment. It is to this holding that the Respondent Slater primarily directs his exceptions.

The report and Decree hold with reference to the Hughes Judgment that the same is barred by the Statute of Limitations, the reasoning being that this Judgment having been entered on March 29, 1934, at any time thereafter execution could have been issued thereupon and that the Statute began to run as of March 29, 1934. Petitioners direct their exceptions primarily to this holding.

A more complete statement of facts will be found set forth in the report of the Special Referee and of the Circuit Judge which will be reported herewith.

This Court is of the opinion after a careful examination of the record and a study of the report and Decree that all exceptions should be overruled save that of the Petitioners which poses the issue as to whether the Hughes Judgment was out of date, being barred by the Statute of Limitations. This exception is sustained. So long as the Respondent Slater continued to make the monthly payments of One Hundred Dollars and otherwise complied with the terms of the Decree of Judge Shipp, the mortgagee could not avail himself of any remedy provided by the Decree, or by law, and not until default was made could the Statute begin to run so as to result in a conclusion of the rights of Petitioners. In addition to the cases and authorities cited by Petitioners on this particular point, see also the case of *Cleveland v. the City of Spartanburg,* reported in 194 S. E., 128.

The matter is accordingly remanded for such disposition as is in agreement with the holdings of this opinion.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and OXNER concur.

REPORT OF HONORABLE JOHN S. BOWMAN, COUNTY JUDGE,
AS SPECIAL REFEREE

To the Honorable, the Court of Common Pleas for
Orangeburg County:

The undersigned, County Judge as Special Referee, to
whom the above-entitled action was referred by the order
of this Court, dated September 21st, 1944, "to hear and de-
termine the issues of law and fact and to report his conclu-
sions to this Court with all convenient speed", begs leave
to report:

Attended by the parties and their attorneys, I have held
references in the cause and the testimony taken at these ref-
erences has been transcribed and is herewith submitted.

The defendant, J. B. Robinson, died, testate, in August,
1938, and in the settlement of the estate his interests in this
action were assigned to his children, the petitioners, Thelma
R. Smith, Hazel C. Gue and Charles H. Robinson. The said
order of reference substitutes them as parties plaintiff in
the place of Jessie C. Hughes and in the place of J. B. Rob-
inson, defendant, who had previously acquired the interest
of Mrs. Jessie C. Hughes.

The defendant, John D. Slater, on August 23rd, 1922,
executed to State and City Bank and Trust Company eleven
bonds or notes, whereby he promised to pay to said Trust
Company the aggregate amount of $15,000.00, to bear in-
terest from date at the rate of eight per cent. per annum, pay-
able semi-annually, and on the same day and in order to se-
cure the payment of the same, executed to said Trust Com-
pany his certain deed, and thereby conveyed to it by way of
mortgage the real estate described in the complaint in this
action, which is his residence located on the north side of
East Russell Street in the City of Orangeburg. Thereafter,
to wit: On September 28, 1929, said mortgage, together with
certain unpaid bonds or notes, were assigned to W. M.
Hughes, the debt then being ten thousand dollars, and by
agreement the rate of interest was reduced to seven per cent.

Thereafter, the said bonds or notes, together with said mortgage were assigned to the plaintiff, Jessie C. Hughes, who on July 3rd, 1933, commenced the above-entitled action to foreclose the said mortgage.

The defendant, J. B. Robinson, having been made a party defendant, duly answered, and in his answer he alleged that on October 2, 1922, the defendant, John D. Slater, executed to his co-defendant, Suzanne Carroll Slater, his certain bond in the actual sum of $25,000.00, and on the same day, to secure said bond, executed to her his certain deed, and thereby conveyed to her by way of mortgage the identical real estate described in the complaint; that on November 7, 1922, the defendant, John D. Slater, borrowed from the defendant, J. B. Robinson, the sum of $5,790.00, and on that day in order to secure the payment of the same, the defendant, Suzanne Carroll Slater, duly assigned to said J. B. Robinson the aforementioned bond and mortgage; "that no part thereof has been paid, and the conditions of said bond, mortgage and assignment have been broken, and the whole amount of principal, interest and attorney's fees are due and collectible under said bond, mortgage and assignment", and prays for foreclosure. Service of this answer was accepted in writing by the attorneys for the plaintiff, and by the attorneys for John D. Slater and Mrs. Suzanne Carroll Slater.

The defendants, Mr. and Mrs. Slater, in their answers, set up general denials to the allegations of the complaint, but neither replied to the answer of the defendant, J. B. Robinson.

Under a general order of reference, dated October 10, 1933, the action was referred to Hon. B. H. Moss, County Judge as Special Referee.

He held a reference on February 24th, 1934. The minutes of reference recite: "Present: Lide & Felder for plaintiff; W. C. Wolfe and M. E. Zeigler, Attorneys for defendants, J. D. Slater and Suzanne Carroll Slater; W. B. Martin, Attorney for J. B. Robinson".

Various papers, instruments and documents, including the bond and mortgage of J. D. Slater to Mrs. Slater, and the assignment thereof to J. B. Robinson, were put in evidence, and with reference thereto the minutes are as follows: "It is agreed that the note drew interest at the same rate as the bond and mortgage. Marked Exhibit 'S'. No payments have been made on that note or bond and mortgage".

On March 13, 1934, Judge Moss filed his report, service of which was accepted by the attorneys for John D. Slater on the same date.

Therein he found that the plaintiff was due on her mortgage indebtedness the sum of $12,404.93, and that she is entitled to judgment for foreclosure and sale of the real estate for the payment of the amount due.

With reference to the Slater mortgage assigned to J. B. Robinson, he finds the facts as alleged in the answer of J. B. Robinson, and immediately following this finding, he says: "I have not calculated the interest due on the said note as it involves merely a matter of calculation to which amount should be added five per cent. thereof as counsel fees for the attorney of J. B. Robinson in this action. Testimony shows that no payments have been made on this note, and that the full amount, with interest and attorney's fees is now due and payable".

The report further recites an agreement of the plaintiff dated December 9th, 1933, with the defendant, J. D. Slater, as to the making of certain monthly payments on her mortgage indebtedness, and recommends that the property be not sold so long as these payments are made, but declares that this agreement does not bind the defendant, J. B. Robinson, and recommends that the property may be sold at any time under his mortgage at the request of counsel in the cause representing the said J. B. Robinson.

Decree for foreclosure and sale was granted by Judge S. W. G. Shipp on March 21, 1934.

In it the report of Special Referee is confirmed, approved and made a part of the judgment of the Court. Next he orders that the plaintiff have judgment against the defendant, John D. Slater, for the sum of $12,404.93. He then orders the real estate sold by said Special Referee on some salesday, as thereinafter provided, at Orangeburg Court House, after due advertisement of the time and place of sale. Reference is then made to the agreement set forth in the report, and the terms thereof, and declares that said real estate may not be sold pending the compliance of the defendant, John D. Slater, with the terms of said agreement, or until he shall make default in making the required payments, and in such event the said real estate shall be sold upon the written application by the plaintiff or her attorneys to said County Judge as Special Referee for sale of the same which agreement the Court approved.

With reference to the J. B. Robinson mortgage, the decree directs that the real estate may be sold upon application in writing by the said J. B. Robinson or his attorneys at any time subsequent to October 1st, 1934.

In the event of a sale, the proceeds shall be applied to plaintiff's debt, taxes, costs, etc., and next to the indebtedness of J. B. Robinson, with interest thereon to be calculated as set forth in said report, together with five per cent. of the amount due as attorney's fee. Then follows this statement: "This is a matter that may be easily determined by calculation".

The Judgment Roll containing all papers, records, pleadings, instruments, and related matters, including the said decree, were filed in the office of the Clerk of Court of this County on March 29, 1934, and appears in said office as Roll No. 270, Package No. 10.

The abstract and indexes in the office of the Clerk of Court show that the Hughes judgment was regularly entered, but it does not appear that any execution was ever issued there-

under—neither does it appear that any appeal was taken from the judgment so entered.

No judgment was entered respecting the Robinson mortgage. Thereafter, to wit: On December 4th, 1936, the Hughes judgment · was assigned to J. B. Robinson, the amount then due thereon being the sum of $8,434.81. February 28th, 1945, the defendant gave notice that at the hearing scheduled to take place on March 12th, 1945, he would make a motion to file the return attached to said notice, embracing the motions therein set forth, and that the motion would be based upon the entire record of proceedings and upon Sections 494, 495 and 498 of the Code.

The substance of the return may be summarized as follows:

1. Denial that a judgment had been granted in favor of J. B. Robinson against John D. Slater.

2. Alleges that there remains only a small amount due on the indebtedness to J. B. Robinson, which he had offered to pay, and is still willing to pay.

3. That the statement in the record to the effect that no payments had been made on the J. B. Robinson mortgage was incorrect, and alleges that payments have been made which at the time said answer was filed had reduced the amount to about the sum of $286.00.

4. Asks permission to file a reply to said answer setting up the payments set forth in the testimony of John Rousseau.

5. Asks permission to amend the proceedings so as to correct the statements that "no payments" had been made.

6. Asks permission to file a supplemental answer or reply setting up payments made during the pendency of the action and after the judgment of Jessie C. Hughes was assigned to J. B. Robinson, and the agreement of February 5, 1937, reducing the rate of interest to five per cent. and that the defendant should make monthly payments of $100.00 each,

which had been done, thereby reducing the debt to the small balance above mentioned.

7. That if a judgment was granted in favor of J. B. Robinson against John D. Slater as alleged in the petition, and which is denied the same was never entered, and is now out of date and is barred by the Statute of Limitations.

8. Asks that this return be accepted as a reply to the answer of Robinson, and as the supplemental answer alleging the payments to aforesaid, and that the proceedings be considered as amended so as to conform to the testimony offered by the defendant relating to payments on the indebtedness.

Prior thereto, to wit: On November 6th, 1944, the defendant, John D. Slater, filed a written motion, which asks for about the same relief as is stated in the foregoing return.

An inspection of the judgment roll discloses that it contains the record of two separate and distinct mortgage foreclosure proceedings. One arises out of the allegations of the complaint, and for clarity purposes will be referred to as the Hughes judgment, and the other arises out of the allegations of the answer of the defendant, J. B. Robinson, and will be called the Robinson judgment.

The essential difference between the two will appear as we study the two prescribed modes of procedure respecting the foreclosure of mortgages. Section 487 of the Code sets out that "In actions to foreclose mortgages, the Court shall have power to adjudge and direct the payment by the mortgagor of any residue of the mortgaged debt that may remain unsatisfied after a sale of the mortgaged premises in cases in which the mortgagor shall be personally liable for the debt secured by such mortgage * * * and may enforce such judgment as in other cases".

This may be denominated the first method, which is well described in the opinion of Chief Justice McIver in the case of *Parr v. Lindler*, 40 S. C., 201, in which it is held that "no personal judgment can be rendered against the mortgagor

for any deficiency until the amount of the same has been ascertained by a sale of the mortgaged premises, and an application of the proceeds of such sale has been made to the mortgaged debt", and further that "the question, whether there is any deficiency, and if so, the amount thereof, is a judicial question, upon which the mortgagor has a right to be heard" which should be determined by the Court and not left to the decision of a mere ministerial officer who makes the sale. This has been called the old practice.

It is interesting to note that this decision was rendered December 1st, 1893, which is, of course, prior to the Act of 1894, which statute, as declared by Justice Gage in the case of *Barron v. So. Scale and Fixture Co.,* 106 S. C., 344, "was manifestly enacted to establish a markedly different rule of procedure".

The Code Section 487 above referred to was amended by the Act of 1894 (1894 (21) 816) as follows: "The Court shall also have the power to render judgment against the parties liable for the payment of the debt secured by the mortgage and to direct at the same time the sale of the mortgaged premises. The said judgment so rendered may be entered and docketed in the Clerk's office in the same manner as other judgments. Upon sale of the mortgaged premises, the officer making the sale under the Order of the Court shall credit upon the judgment so rendered for the debt the amount or amounts paid to the plaintiff from the proceeds of the sale".

It is held that in the case of *White v. Douglas,* 128 S. C., 409, 122 S. E., 259; *Berry v. Caldwell,* 121 S. C., 418, 114 S. E., 405 (in this case the judge refused to order a personal judgment at the time of rendering the decree), and the case of *Barron v. So. Scale & Fixture Co., supra*—that it is discretionary with the trial judge making the decree whether or not he will order a personal judgment in the decree of foreclosure and sale. If he does not, the proceedings will be deemed to be in accordance with the old practice.

Clearly the Robinson foreclosure proceeding is controlled by the old practice, and the Hughes foreclosure proceeding is in accordance with the new practice.

The ascertainment of the amount due respecting the Robinson proceeding is in compliance with Section 8708 of the Code, it being declared therein that no sale shall be valid to pass the title of the land mortgaged unless the debt for which the security is given shall be first established by the judgment of some Court of competent jurisdiction.

■ It is contended that in view of the fact that the interest on the obligation was not calculated, that this rendered it ineffectual as a judgment. The case of *Christenson v. Griffin,* 107 S. C., 456, shows that this objection cannot be sustained, it being therein held that a matter that can be made certain is regarded as certain:—*"Id certum est quod certum reddi potest".*

As this Special Referee sees it, it was never a money judgment nor was it ever intended as such. The ascertainment was in compliance with law. Its purpose is to inform the mortgagor as to the amount of the indebtedness so as to afford the opportunity of redemption as well as intelligent bidding, which would be equally valuable to the creditor. Also it is intended as a basis for the Court in arriving at the amount for which a deficiency judgment should be ordered.

It assimilates the special verdict in claim and delivery where the basis of the action is an instrument for the security of debt. The jury finds the amount due, but it is not a judgment, and may not be entered as such. Its purpose is to permit the defendant the opportunity of paying the debt, and being relieved of the action.

There can be no doubt that the Hughes judgment is a final judgment.

■ Also I am of the opinion, although the deficiency judgment has not been ascertained, and cannot be ascertained until the mortgaged property is sold and the proceeds ap-

plied, that the Robinson foreclosure proceeding is also a final judgment. Certainly if the mortgaged property had been sold, the purchaser would have obtained a valid title thereto. If then the defendant should now be allowed to produce evidence of payments made prior to the date of the judgment, and thereby the ascertained amount is reduced, it seems to me that in reality the judgment for foreclosure and sale would thereby be destroyed and rendered invalid.

■ The relief sought by the defendant is to open up the judgment, and set aside the report of the Special Referee, and submit evidence of payments made by him on the obligation prior to the date of the report and the judgment.

In the transcript of the record will be found the evidence of the defendant as to these alleged payments. This testimony was taken subject to the objection of the mortgage creditors, and in view of the results of this report this evidence must now be held irrelevant, and should be stricken from the record.

The authority for the sought relief is founded on Sections 494, 495 and 498 of the Code. It will be observed that there is no direct motion to set aside the judgment and open up the Special Referee's report, but the view advanced is that in law and fact no judgment ever existed, and the cause is still open for the application of the relief.

The answer of J. B. Robinson alleges no payments, the report finds as a fact that there were none, and the decree affirms the report. J. B. Robinson has been dead since 1938, and more than eleven years have elapsed since the date of the judgment.

A study of those sections is convincing that they were not intended to give relief on the facts as herein found.

I am of the opinion that the Court has not the power under those circumstances to cut through the judgment, and the Special Referee's report, and open up issues long since

closed. Clearly the issue of payments is now *res judicata,* and cannot be disturbed, and the relief sought cannot be granted.

In accordance with the order of the Court, I have calculated the amount due on the Robinson judgment. The amounts paid since the acquirement of the Hughes judgment by J. B. Robinson have been applied on the Robinson judgment for the reason that the Robinson judgment carried a higher rate of interest. Also, in this calculation effect has been given to the written agreement whereby for a period of six years the rate of interest was reduced to five per cent. The amount now due is the sum of Thirteen Thousand, Three Hundred and Sixty-two and 33/100 ($13,362.33) Dollars, which includes a five per cent. counsel fee provided for in the decree.

I have not calculated the amount due on the Hughes judgment for the reason that the testimony satisfies me that this judgment is out of date and is barred by the Statute of Limitations.

This judgment was entered of record on March 29, 1934. At any time thereafter execution could have been issued thereunder. There is no order of the Court staying the issuance of execution.

The Mortgage Foreclosure Procedure Act appears not to have been invoked. 1934 (38) 2287. This act went into effect March 2, 1934, and provides that the Court may order a stay of the foreclosure proceedings, conditioned upon the assignment of the rents or the payment of a reasonable rental value by the mortgagor. The Act provides that "Such Courts may extend the time for the sale of the mortgaged premises after judgment for a period not to exceed one year, *may grant judgments without orders of sale, etc.*" and that "This Act shall remain in effect for a period of two years from the date of its approval".

It may be that the Court could have stayed the issuance of an execution on this judgment, a matter which is open

to doubt, but a reading of the decree shows that this was not done, and if it had been done, one year from the date of the judgment was the utmost that it could have been stayed.

The ten-year period expired on March 29th, 1944. If we allow for this extra year, then the Statutory period would have expired on March 29th, 1945.

It is contended that the Order of Reference issued in this case on September 21st, 1944, arrested the currency of the Statute. I do not find myself in agreement with this proposition. There can be no doubt that the Hughes judgment is a final judgment, and I do not understand that the Courts can have any jurisdiction over it after entry.

It is further contended that the agreement found in the decree had the effect of staying the execution. It is plain that said agreement is the agreement of the parties, and is in effect the extension of an agreement made December 9th, 1933, and its only obligation was to stay the sale so long as the agreed payments were made. It in no way resembles the requirements of the Mortgage Foreclosure Act.

The Act aforesaid instead of staying the execution of judgments seems to have preserved this right for the benefit of the creditor, and this is reasonable when it is considered that it is entirely possible that the creditor might have been able to collect his money out of property not covered by any mortgage, and certainly the act did not contemplate denying him this relief.

I, therefore, conclude and recommend a decree adjudging:

(1) That the mortgage foreclosure proceedings herein are final judgments.

(2) That the issue as to payments respecting the Robinson judgment is *res judicata*.

(3) That the relief asked by the defendant cannot be granted.

(4) That the amount due on the Robinson judgment is the sum of Thirteen Thousand, Three Hundred and Sixty-two and 33/100 ($13,362.33) Dollars.

(5) That the Hughes judgment is barred by the Statute of Limitations, and

(6) That the petitioners, now plaintiffs, in this action by substitution, are entitled to the relief sought by them.

Dated April 16, 1945.

### DECREE OF JUDGE MANN

This matter was heard before me upon exceptions to the Report of the Honorable John S. Bowman, County Judge as Special Referee, dated April 16, 1945. I heard all the Attorneys at length, read the testimony, examined the exhibits and have given much time to the issues involved.

The Defendant, John D. Slater, on August 23, 1922, executed to State and City Bank and Trust Company eleven bonds or notes, whereby he promised to pay to the said Trust Company the aggregate amount of Fifteen Thousand ($15,000.00) Dollars, to bear interest from date at the rate of eight (8) per cent., per annum, payable semi-annually, the last note being due and payable September 1, 1927, and on the same day in order to secure the payment of the same, executed to said Trust Company his certain deed, and thereby conveyed to it by way of mortgage the real estate described in the complaint in this action, which is his residence located on the north side of East Russell Street, in the City of Orangeburg. Thereafter, on September 28, 1929, said mortgage, together with certain unpaid bonds or notes were assigned to W. M. Hughes, the debt then being Ten Thousand ($10,000.00) Dollars, and by agreement the rate of interest was reduced to seven per cent.

Thereafter, the said bonds or notes, together with said mortgage were assigned to the Plaintiff, Jessie C. Hughes, who on July 3rd, 1933, commenced the above-entitled action to foreclose the said mortgage.

The Defendant, J. B. Robinson, having been made a party defendant, duly answered, and in his answer he alleged: (1) that on October 2, 1922, the Defendant, John D. Slater, executed to his co-defendant, Suzanne Carroll Slater, his certain bond in the actual sum of Twenty-five Thousand ($25,-000.00) Dollars, and on the same day, to secure said bond, executed to her his certain deed, and thereby conveyed to her by way of mortgage the identical real estate described in the complaint; (2) that on November 7th, 1922, the Defendant, John D. Slater, borrowed from the Defendant, J. B. Robinson, the sum of Five Thousand, Seven Hundred Ninety ($5,790.00) dollars, and on that day in order to secure the payment of the same, the Defendant, Suzanne Carroll Slater, duly assigned to the said J. B. Robinson the aforementioned bond and mortgage; (3) "That no part thereof has been paid, and the conditions of said bond, mortgage and assignment have been broken, and the whole amount of principal, interest and attorney's fees are due and collectible under said bond, mortgage and assignment", and prays for foreclosure. Service of this answer was accepted in writing by the attorneys for the Plaintiff, and by the attorneys for John D. Slater and Mrs. Suzanne Carroll Slater.

The Defendants, Mr. and Mrs. Slater, in their answers, set up general denials to the allegations of the complaint, but neither replied to the answer of the Defendant, J. B. Robinson.

Under a general order of reference, dated October 10, 1933, the action was referred to Honorable B. H. Moss, County Judge as Special Referee.

He held a reference on February 24th, 1934. The minutes of reference recite: "Present: Lide & Felder for Plaintiff; W. C. Wolfe and M. E. Zeigler, Attorneys for Defendants, J. D. Slater and Suzanne Carroll Slater; W. B. Martin, Attorney for J. B. Robinson".

Various papers, instruments and documents, including the bond and mortgage of J. D. Slater to Mrs. Slater, and the

assignment thereof to J. B. Robinson, were put in evidence, and with reference thereto the minutes are as follows: "It is agreed that the note drew interest at the same rate as the bond and mortgage. Marked Exhibit 'S'. No payments have been made on that note or bond and mortgage".

On March 13, 1934, Judge Moss filed his report, service of which was accepted by the attorneys for John D. Slater on the same date.

Therein he found that the plaintiff was due on her mortgage indebtedness the sum of Twelve Thousand Four Hundred Four Dollars and Ninety-Three Cents ($12,404.93), and that she is entitled to judgment for foreclosure and sale of the real estate for the payment of the amount due.

With reference to the Slater mortgage assigned to J. B. Robinson, he finds the facts to be as alleged in the answer of J. B. Robinson, and immediately following this finding he says: "I have not calculated the interest due on the said note as it involves merely a matter of calculation to which amount should be added five (5) per cent. thereof as counsel fees for the attorney of J. B. Robinson in this action. Testimony shows that no payments have been made on this note, and that the full amount, with interest and attorney's fees, is now due and payable".

The report further recites an agreement of the plaintiff dated December 9th, 1933, with the Defendant, J. D. Slater, as to the making of certain monthly payments on her mortgage indebtedness, and recommends that the property be not sold so long as these payments are made, but declares that this agreement does not bind the Defendant, J. B. Robinson, and recommends that the property may be sold at any time under his mortgage at the request of counsel in the cause representing the said J. B. Robinson.

Decree for foreclosure and sale was granted by Judge S. W. G. Shipp on March 21, 1934.

By the provisions of this Decree the report of the Special Referee is confirmed, approved and made a part of the judg-

ment of the Court. Next he orders that the Plaintiff have judgment against the Defendant, John D. Slater, for the sum of Twelve Thousand Four Hundred Four Dollars and Ninety-Three Cents ($12,404.93). He then orders the real estate sold by said Special Referee on some salesday, as thereinafter provided, at. Orangeburg Court House, after due advertisement of the time and place of sale. Reference is then made to the agreement set forth in the report, and the terms thereof, and declares that said real estate may not be sold pending the compliance of the Defendant, John D. Slater; that is, as long as he paid One Hundred ($100.00) Dollars a month the property could not be sold until the indebtedness was reduced to Ten Thousand ($10,000.00) Dollars, or until he shall make default in making the required payments, and in such event the said real estate shall be sold upon the written application by the plaintiff or her attorneys to said County Judge as Special Referee for sale of the same, which agreement the Court approved.

With reference to the J. B. Robinson mortgage, the decree provides: "The Defendant, J. B. Robinson, has a junior mortgage on the real estate herein described and the record does not disclose that any arrangements have been made with him, or his attorney, for extension of time for payment of this indebtedness and any agreement with plaintiff is not binding on him. The said County Judge, as Special Referee, shall sell the real estate, as hereinbefore provided, upon application in writing by the said J. B. Robinson, or his attorney at any time, but not prior to October 1st, 1934.

"From the proceeds of the sale of the real estate, regardless upon whose application the sale shall be made, there shall first be paid the costs and expenses of such sale and of this action, and any taxes that may be due and owing on the real estate, and then there shall be paid the amount remaining due to plaintiff on her indebtedness and attorneys fees, with interest thereon at the rate of seven (7) per cent. per annum from March 1st, 1934. Next from the proceeds of such sale there shall be paid the amount of the indebtedness

due the Defendant, J. B. Robinson, with interest thereon to be calculated as set forth in the said Report, together with five (5) per cent. of the amount due for the attorney of the said J. B. Robinson in this action. This is a matter that may be easily determined by calculation".

The Judgment Roll containing all papers, records, pleadings, instruments, and related matter, including the said decree, were filed in the office of the Clerk of Court of this County on March 29th, 1934, and appears in said office as Roll No. 270, package No. 10.

The abstract and indexes in the office of the Clerk of Court show that the Hughes judgment was regularly entered, but it does not appear that any execution was ever issued thereunder—neither does it appear that any appeal was taken from the judgment so entered. No judgment was entered on the abstract and indexes in the Clerk's office respecting the Robinson mortgage.

In November, 1936, the indebtedness due Hughes having been reduced to Ten Thousand ($10,000.00) dollars, Hughes notified Slater that unless the indebtedness was paid the property would be sold under the judgment. At this time negotiations were had between Slater and Robinson, the result of which, Robinson, who held the second mortgage, took up the Hughes judgment and on December 4, 1936, the Hughes judgment was assigned to Robinson showing Nine Thousand Four Hundred Thirty-Four Dollars and Eighty-One Cents ($9,434.81) due thereon. Robinson now owned both judgments but for the purpose of clarity I will continue to refer to them separately.

. On February 4, 1937, Slater and Robinson entered into an agreement which was introduced into evidence and marked Exhibit "AX", wherein is set forth "I hereby agree for John D. Slater two bonds and mortgage to run for six years at five (5) per cent. each and payable One Hundred ($100.00) dollars the first week of each month, etc." This

agreement, somewhat mutilated, was put into evidence by John D. Slater.

The Defendant, Slater, continued paying the One Hundred ($100.00) Dollars a month. Robinson died in August, 1938, and in the settling of his estate his interest in this action was assigned to his children, the petitioners, Thelma R. Smith, Hazel C. Gue and Charles H. Robinson who are now designated as the plaintiffs and have been substituted therein by the Order of Reference dated September 21, 1944.

In the appraisal of the Estate of J. B. Robinson the Defendant, John D. Slater, acted as one of the Appraisers and on the warrant of appraisal among numerous other things there is listed the John D. Slater mortgage indebtedness face value Thirteen Thousand Five Hundred Dollars and Eighty-One Cents ($13,500.81). Slater, however, subscribed his name to the Return of the Appraisers, which though not in his writing, contains the listed items showing his mortgage indebtedness to Robinson to be as above mentioned. The Executrices of the Estate of J. B. Robinson stated that they did not have any record or books of J. B. Robinson, deceased, from which they could determine the amount due by Slater and that this amount was given to them by Mr. Slater. Mr. Slater denies furnishing this fact.

The Defendant continued paying One Hundred ($100.00) Dollars a month to the Plaintiffs and in August, 1943, the Plaintiffs asked the Defendant for a settlement of the indebtedness and the Defendant promised that he would prepare a statement and as soon as he could get it he would pay the indebtedness.

The Defendant went to W. H. Rousseau and Company, Accountants, gave him a number of checks commencing in October, 1923, and had Rousseau and Company calculate for him a statement. This statement is dated December 1, 1943, and according to the checks furnished by Slater to Rousseau the calculation shows a balance due of Four Hundred Twenty-Two Dollars and Ninety-Three Cents ($422.93).

The Plaintiffs apparently did not know of this statement until it was introduced into evidence before the Honorable John S. Bowman, Special Referee. The Defendant continued making the monthly payments of One Hundred ($100.00) Dollars and on April 7, 1944, wrote the Plaintiffs a letter stating that enclosed was a check for Twenty-Two Dollars and Ninety-Three Cents ($22.93) which he designated the full amount due on the indebtedness and asked that the same be marked paid. The Plaintiffs refused the check and immediately returned the same to the Defendant and stated that a much larger sum was due.

On September 13, 1944, Thelma R. Smith, Hazel C. Gue and Charles H. Robinson, children of J. B. Robinson, deceased, who owned the indebtedness due by the defendant, filed their petition in the present action, asked the Court to substitute them as plaintiffs, for an order of reference referring the matter to Honorable John S. Bowman, County Judge as Special Referee (Judge Moss, the former Special Referee, having died in 1939), that the Court determine the amount due by the defendant, and for the sale of the real estate described in this action. On September 21, 1944, by order of this Court the above parties were substituted as plaintiffs and in the place of J. B. Robinson, Defendant, deceased, and the matter was referred to the Honorable John S. Bowman, as Special Referee.

At the third reference on November 6, 1944, after the plaintiffs had closed their case and defendant had put up two witnesses the defendant then moved the Court to allow him to amend his answer and set up the defense of payment.

■ Subject to Plaintiff's objections the Defendant introduced a number of checks from himself to Robinson dated prior to the date of the Report of B. H. Moss, Special Referee, dated February 24, 1934, and prior to the Decree of Judge Shipp dated March 21, 1934.

The Plaintiffs denied that these checks are payments on the Robinson mortgage and objected to their introduction.

The record shows that about the year 1923 the Defendant, John D. Slater, borrowed from Robinson approximately Eighteen Thousand ($18,000.00) Dollars on some business property in the City of Orangeburg. This mortgage was foreclosed in a separate action in 1933 and the property sold. The record of that foreclosure proceeding states that approximately sixty-one (61) payments were made by Slater to Robinson on the bond and mortgage covering the business property.

The testimony in the present case taken before Judge Bowman as Special Referee shows that over a period of twenty (20) years or more prior to the death of J. B. Robinson that the Defendant, John D. Slater, borrowed numerous sums of money from Robinson on open account amounting to as much as One Thousand ($1,000.00) dollars at a time. The Defendant is in the livestock business and frequently borrowed money from Robinson without collateral to purchase mules. That Robinson would give his check to Slater and then in turn Slater would give his check to Robinson.

The record clearly discloses that there were three concurrent debt due by Slater to Robinson during the period from about 1920 up to 1933, that is: the indebtedness on the business property, the indebtedness on open account, and the indebtedness on the property described in this action.

The record discloses quite clearly that the business methods between these two successful and good business men were lax in the extremest degree. No books or methodical accounts were kept by either party. Practically all transactions, numerous and extending over a long period of years, were made through the medium of checks with little if any intelligent notations to indicate their nature or purpose. They were good friends, evidently very useful to each other, apparently made personal confidence in each other and personal knowledge of their many transactions their basis of adjusting accounts.

But, convenient and satisfactory as it was to them, and as great a tribute as it is to the unbounded mutual regard they had for each other, the result is that it is now humanly impossible to review what they give us as the record of their doings and ascertain with any certainty the correct account to which these checks should have been applied.

Judge Bowman, as the Special Referee, after careful thought upon their tender as testimony, declined their relevancy as to credits on the Robinson mortgage and excluded them.

In this holding I fully sustain him.

The motion to amend the answer of Slater was overruled by the Special Referee and I affirm this ruling.

The position taken by Counsel for Slater that the Decree passed by Judge Shipp was not a final judgment in the purview of the Statute and that not being final, the whole matter is still open for amendment to his answer whereby he may now plead payment, I think is clearly untenable.

■ As to the finality of the Robinson judgment, the Special Referee has given a most interesting analysis of the various sections of the Statute involved. I have given this analysis quite close study, and as to whether the Special Referee is entirely correct in some of his views therein expressed, is not so much a matter of serious concern to me that he is correct in this analysis, as is my conclusion that he is correct in *his conclusion,* both as to the nature and scope of .the judgment rendered by Judge Shipp, and its being a complete *res adjudicata* of the issues in controversy.

That the Decree was rendered under the authority of the Statute is not questioned. The purpose of Robinson to foreclose his mortgage, ascertain the amount due, secure authority for a judicial sale and carry the matter to its methodical conclusion is clear upon the record: That he felt that his interests might best be served by not forcing an immediate sale and that the Court did not deem it necessary in that

Decree to go into the single detail of the calculation, the rate of which was fixed in the mortgage, is so stated in the Decree.

The Decree stated that the entire mortgage debt was due and unpaid and adjudicated the right to foreclosure and named the method by which the sale could be had.

All parties in interest, the entire subject-matter and all the issues were within the jurisdiction of the Court.

There was no appeal from the provisions of the Decree passed by Judge Shipp and I am convinced that all matters therein passed upon by him are now the settled and unimpeachable law of this case.

■ The time to raise objection to the provisions of the Decree of Judge Shipp, either on account of irregularity, or lack of clarity, or failure to require immediate calculation of the interest, or to bring the amount to a figure certain so that it might then be entered in the abstract of judgments, were issues that should then have been raised either by way of exception on appeal, or motion to reopen for modification or clarification.

■ The law is well settled in this state that a matter involved in a cause and finally disposed of by circuit decree becomes *res judicata* and cannot be again stirred in the further progress of the cause.

> *Symmes v. Symmes,* 18 S. C., 602;
>
> *Wilson v. Dove,* 118 S. C., 256;
>
> *Hughes v. Southern Railroad Co.,* 92 S. C., 14.

### As to Laches

■ The issue of laches was not made before the Special Referee and is made here for the first time. Counsel have argued the matter in great earnestness and with thoroughness. I have given the matter also my earnest consideration and after a careful review of all the facts in the case, I feel that

in the light of all the circumstances, this plea should not avail.

I do not absolve the Robinsons from a measure of carelessness, and do not hesitate to say that the present situation is in part chargeable to their failure to act with more alertness and insist upon more correct business methods in pursuing their interests. After they learned at the time of the appraisement of the estate of J. B. Robinson of the confused and uncertain status of Slater's obligations to them, common sense dictates that they should have then adopted a stricter business policy than that followed by their father.

But there is one fact that we cannot escape that I think must be resolved in their favor and against Slater. All these indulgences both by Robinson and the plaintiffs and later extended by the sanction of the Court, were made for the benefit of Slater. Robinson did not call on him and indulged him when he was in close financial quarters. He did not press him even when he placed his mortgage in foreclosure in answering the Hughes proceeding. He did nothing more than was apparently necessary at that time to protect his interests. He obtained the sanction of the Court to place his judgment in the records of the Court and to withhold the date of sale at his option. He did not take advantage of this option of sale during his lifetime but continued transacting business with Slater with reference to the mortgage debt in their own, haphazard way. This all certainly resulted in considerable advantage to Slater and has doubtless resulted in loss to the Robinsons.

Careless as they were, they were following in some degree the spirit of indulgence practiced by their father and later, to some extent, permitted in the Decree of Judge Shipp, and their indulgence enured to the benefit of Slater.

I do not think that equity should now permit Slater to come in and reap an advantage derived from slack business methods which have been generally all to his advantage and I therefore overrule the plea of laches.

## STATUTE OF LIMITATIONS

The Special Referee has found that the Hughes judgment is barred by the Statute of Limitations and its lien on this property has expired, therefore recommended that this part of the claim is not enforceable in this action. He did not go into the testimony and the applicable law on this issue in detail and neither shall I. I assume that he did as I do. He took a bird's-eye view of the whole case and decided that the Robinson mortgage substantially represented the entire indebtedness. His application of the payments appearing in the relevant testimony seems fair and equitable and I affirm his findings and recommendations as to the Hughes judgment and also allow the One Thousand ($1,000.00) Dollar payment thereon dated December 5, 1936.

Slater contends that inasmuch as the Special Referee has found that the Hughes judgment is barred by the Statute of Limitations that there is no difference in their standing in Court and that the Robinson judgment is also barred.

I do not subscribe to this proposition. I think the two accounts are on an entirely different legal footing. The Hughes judgment was circumscribed by all the definiteness of time and provisions that were necessary. The law fixing the exact duration of the lien of Hughes judgment was clear and fixed in the knowledge of the Robinsons. It was entered upon the abstract of judgments and they took judicial notice of the date of its expiration unless they complied with the requirements of providing for its extension. This, they sat by and did not do and allowed the Statute to run against them. In the Robinson matter, the Court modified the method of procedure, both with respect to the calculation of interest, extension of time, fixing a date of sale and such further subsequent acts as were necessary to enter formally the judgment upon the records of the Court. Slater has accepted this exceptional procedure as well as the Robinsons.

The present procedure is authorized by and in conformity with the provisions of Judge Shipp's Decree.

This contention is therefore overruled.

### Comment

In giving the Report of Judge Bowman as Special Referee a careful study, it becomes very evident that he kept foremost in his mind that he was presiding in a Court of Equity. He was confronted with a most unusual state of facts and a maze of most confusing, imperfect set of records. It is my conviction that his conclusions are prompted as much by his earnest desire to strike for the abstract justice of the controversy as by his effort to find and be guided by the controlling principles of law and equity. I am convinced that he has come as nearly as is humanly possible with the testimony before him to a fair, equitable and just conclusion. With this conviction to rest my judgment upon, I feel all the more assured in giving a general order of affirmation to his splended report.

In treating the issues, I have pursued the form above set forth, rather than treat each exception, or set of exceptions separately. Certainly I have not meant to ignore or impute any insignificance to any of them. I have endeavored to couch this Decree in form and language that will make a clear and comprehensive disposition of all issues in controversy, without regard to technical procedure.

*It is therefore ordered, adjudged and decreed:* That the Report of the Honorable John S. Bowman, County Judge as Special Referee, dated April 16, 1945, be, and the same is, hereby confirmed and made the judgment of this Court.

*It is further ordered, adjudged and decreed:* That there is due to the plaintiffs, Thelma R. Smith, Hazel C. Gue and Charles H. Robinson by the defendant, John D. Slater, on the Robinson judgment the sum of Thirteen Thousand Three Hundred Sixty-Two Dollars and Thirty-Three Cents ($13,362.33) as of April 16, 1945, and interest thereon from that date at the rate of six (6) per cent. per annum; and that the proceeds of sale, after payment of costs and expenses, be paid on the amount due on the Robinson judgment, either to plaintiffs or their attorney, and the balance, if any, be held subject to the futher order of the Court.

*It is further ordered, adjudged and decreed:* That the real estate described in this action be sold by the Honorable John S. Bowman, County Judge as Special Referee, on October salesday, 1945, or on some convenient salesday thereafter, at Orangeburg County Court House after due and legal advertisement for cash, pursuant to the terms of sale and in accordance with the provisions of the decree of Judge Shipp dated March 21, 1934.

*It is further ordered, adjudged and decreed:* That the successful bidder at such sale shall deposit the sum of five (5) per cent. of his bid to secure the same and the bid will be held open for thirty (30) days for the reception of any higher bids.

Dated August 22, 1945.