16190

HUGHES v. SLATER *ET AL.*
*EX PARTE* WILLIAMS

(52 S. E. (2d) 419)

Messrs. *J. M. Brailsford, Jr., T. B. Bryant, Jr., and A. J. Hydrick,* all of Orangeburg, *for Appellant,*

*Messrs. Moss & Moss and J. Stokes Salley,* of Orangeburg, *for Respondent,*

March 7, 1949.

OXNER, Justice.

This is a proceeding to sell certain real estate in the City of Orangeburg for the purpose of satisfying a judgment for $758.22 recovered by J. D. Jones, as administrator of the estate of Lewis E. Williams, deceased, against John D. Slater and Suzanne Carroll Slater. This judgment was entered in the office of the Clerk of Court for Orangeburg County on October 23, 1924. Thereafter on October 22,

1934, a proceeding was instituted to revive said judgment and order to that effect was issued on November 11, 1935. The revived judgment was entered in the office of the Clerk of Court on August 5, 1936. The question involved is whether the lien of this judgment had expired prior to the commencement of the proceeding now before us.

Under the terms of Section 743 of the 1942 Code, a judgment constitutes a lien on the real estate of the judgment debtor for a period of ten years from the date thereof. There is also set out in this section the procedure by which a judgment may be revived so as to constitute a lien for an additional period of ten years. It is then provided "that a judgment shall not in any case constitute a lien on any property of the judgment debtor in any county after the lapse of twenty years from the date of the original entry of the judgment." Although it has no effect on this appeal, we call attention to the fact that Section 743 was amended in 1946, 44 St. at L., page 1436, so that now the lien of a judgment only continues for a period of ten years and may not be revived. In *Hardee v. Lynch,* 212 S. C. 6, 46 S. E. (2d) 179, 183, the Court said that the logical result of this amendment "was to utterly extinguish a judgment after the expiration of ten years from the date of entry."

The lien of the judgment now sought to be enforced would ordinarily have expired on October 23, 1944. This proceeding was commenced on or about July 15, 1947, by the filing of a petition in the case of *Jessie C. Hughes, Plaintiff, v. John D. Slater et al., Defendants.* Obviously, it cannot be maintained unless the operation of the statute was suspended by the proceedings had in the main cause which we shall now review.

The main action was commenced in 1933 by Mrs. Jessie C. Hughes for the purpose of foreclosing a first mortgage on the real estate in question which was executed by John D. Slater on August 23, 1922. J. B. Robinson was made a party defendant because he held a second mortgage on the premi-

ses, which was executed by John D. Slater on October 2, 1922. Various judgment creditors, including John D. Jones, as administrator of the estate of Lewis E. Williams, deceased, were also joined as parties defendant. It was alleged in the complaint that these judgment creditors "have or claim to have a lien on the real estate hereinabove described, junior to that of the plaintiff, by reason of certain judgments against the said John D. Slater, and that they should be required to come into this action and set up whatever right or claim they may have in and to the said real estate or be barred from hereafter doing so." The defendant, J. B. Robinson, filed an answer in which he set up the lien of the junior mortgage held by him, alleged that it was past due and that no part thereof had been paid, and asked that his mortgage be foreclosed. This answer was duly served upon both the attorneys for the plaintiff and the attorneys for John D. Slater and Mrs. Suzanne Carroll Slater. The defendant Jones, as administrator, set up in his answer the judgment held by him and after stating that no part thereof had been paid, alleged "that said judgment is a lien on all the property of the said J. D. Slater and Suzanne Carroll Slater in Orangeburg County, in said State, and is junior only to such liens as may be proven as antedating the judgment herein set up and as not having been paid, or as shall be proven to be entitled to priority, whether antedating the judgment herein set up or not." The prayer was "that the rights and priorities of the parties to this action be fixed by this Honorable Court, according to law, and that if there then be sufficient funds to pay his judgment, or any part thereof, after the disbursement of the funds obtained from the sale of the premises herein sought to be foreclosed, to judgment lien holders whose rights are prior to the right of this lien, that same be paid to him or his attorney." This answer was only served on the plaintiff. No contention is made that it was ever served upon the defendant, John D. Slater, who executed the mortgages sought to be foreclosed.

The case was referred to a referee by order dated October 10, 1933. On December 9, 1933, plaintiff and defendant, John D. Slater, entered into an agreement whereby the property would not be sold provided Slater made certain monthly payments on account of the accumulated interest on plaintiff's mortgage indebtedness and the taxes that were in arrears. A reference was held on February 24, 1934. On March 13, 1934, the referee filed a report in which he recommended that a sale of the property under plaintiff's mortgage be postponed in accordance with the terms of the agreement but that if Slater defaulted in making the monthly installments, plaintiff should have leave to immediately apply for a sale. It was further stated in this report: "This agreement cannot bind the defendant, J. B. Robinson, and I recommend that the said property may be sold at any time under his mortgage at the request of counsel in the cause representing the said J. B. Robinson." The referee further stated: "The defendant, J. D. Jones, as administrator of the estate of Lewis Williams, deceased, in his answer sets up a judgment against J. D. Slater junior to plaintiff's mortgage and the mortgage to Mrs. Slater (The second mortgage was originally given to Mrs. Slater and by her assigned to J. B. Robinson). This judgment constitutes a lien on the real estate described in the complaint in this action junior to that of the two mortgages." In a foreclosure decree dated March 21, 1934, the report of the referee was confirmed and plaintiff was awarded judgment against John D. Slater for the full amount due on his mortgage. The Court authorized a sale of the property upon the application of the plaintiff in the event Slater failed to comply with the agreement above mentioned and it was further ordered that the property could be sold at any time subsequent to October 1, 1934, upon the application of defendant Robinson, who held the second mortgage on the premises. No specific reference to the judgment creditors was made in this decree but it did contain the following provision: "Should there then remain further proceeds from such sale the same should be held subject to

the further order of the Court in order that the rights and priorities · of other · creditors and parties to this action: may be adjudicated."

On December 4, 1936, the plaintiff's judgment was assigned to the defendant, J. B. Robinson, who then held both mortgages on the premises. The monthly payments which had theretofore been paid by Slater to the plaintiff were thereafter paid to Robinson. Robinson died in August, 1938, and in the settlement of his estate the mortgage indebtedness heretofore mentioned was assigned to his children. On September 13, 1944, these children filed a petition in the foreclosure proceedings asking that they be substituted as plaintiffs and for an order of reference to determine the amount due on the mortgage indebtedness. John D. Jones died prior to the filing of this petition and apparently it was not served on anyone interested in the Jones judgment. On September 21st, an order was duly passed substituting the children of Robinson as plaintiffs and referring the case to a special referee. On April 16, 1945, the referee filed a report in which he concluded that the Hughes judgment which had been assigned to Robinson was barred by the statute of limitations, but that the substituted plaintiffs were entitled to have the property sold to satisfy the amount due on the second mortgage. On August 22, 1945, a decree was entered confirming the report of the referee, adjudging the amount due on the second mortgage and directing that the property be sold to satisfy same. On appeal to this Court, it was held, *Hughes et al. v. Slater,* 209 S. C. 168, 39 S. E. (2d) 509, that the judgment representing the amount due on the first mortgage was not barred by the statute of limitations. Accordingly, the decree of the Court below was modified and the case remanded for further proceedings.

During the pendency of the above appeal to the Supreme Court, John D. Slater died on June 18, 1936, leaving a will whereby he devised all of his property to his widow, Suzanne Carroll Slater. She qualified as executrix on August

19, 1946, and was substituted as a party defendant in the place of her husband. After the filing of the decision of the Supreme Court, Mrs. Slater satisfied the indebtedness represented by the two mortgages which were then cancelled of record on October 23, 1946.

The respondent on this appeal, Agnes E. Williams, was appointed administratrix d. b. n. of the estate of Lewis E. Williams, deceased, and as such is now the holder of the judgment formerly recovered by John D. Jones, as administrator. On August 2, 1946, she issued execution of this judgment and on the same day a *nulla bona* return was made. On July 15, 1947, the proceeding now before us was commenced by the filing of a petition in the foreclosure proceedings by said administratrix asking that she be substituted as a party defendant and that the property be sold in satisfaction of the judgment held by her. On December 11, 1947, an order was filed in the Circuit Court granting the relief sought by the petition and the case was referred for the purpose of determining the rights and priorities of all parties so that the mortgaged premises could be sold to satisfy the judgment held by respondent and any other liens on the property. From this decree, Suzanne Carroll Slater, individually and as executrix of the will of John D. Slater, deceased, has appealed.

Appellant contends that since a judgment lien is purely statutory, its duration as fixed by the legislature may not be prolonged by the courts and that the bringing of an action to enforce the lien will not preserve it beyond the time fixed by the statute, if such time expires before the action is tried. There are decisions to this effect. *McAfee v. Reynolds,* 130 Ind. 33, 28 N. E. 423, 18 L. R. A. 211; *McGinnis v. Seibert et al.,* 37 Okl. 272, 184 P. 396; *Savings & Trust Co. of Cleveland, O. v. Bear Valley Irr. Co. et al.,* C. C., 89 F. 32. Respondent asserts that a different rule has been adopted in this jurisdiction as shown by the following cases: *Adams v. Richardson,* 32 S. C. 139, 10 S. E. 931; *Leitner v. Metz,* 32 S. C. 383, 10 S. E. 1082; *Wood v. Mill-*

*ing,* 32 S. C. 378, 10 S. E. 1081; *Henderson v. Trimmier,* 32 S. C. 269, 11 S. E. 540; *Robinson v. Watson,* 198 S. C. 396, 18 S. E. (2d) 215, 217.

*Adams v. Richardson, supra,* involved a proceeding to renew the execution of a judgment. When that case was decided, the lien of a judgment was of indefinite duration. However, a presumption of payment arose after the lapse of twenty years from the date of entry. The Court held that if the judgment debtor is served with a summons to renew the judgment within the twenty year period, an order could be issued reviving the judgment and renewing the execution after the expiration of twenty years. It was stated that the institution of a proceeding to revive the judgment stops the running of the time as to the presumption of payment in the same manner that the commencement of an ordinary action arrests the running of the statute of limitations. *Leitner v. Metz* and *Wood v. Milling,* above mentioned, are to the same effect. In *Henderson v. Trimmier, supra,* an execution was issued and levy made thereunder before the active energy of the execution had expired but the execution had lost its active energy prior to the sale under execution. It was held that the sale was valid. In *Robinson v. Watson et al., supra,* it was held that if a suit to foreclose a real estate mortgage was commenced before the expiration of the period fixed by statute as to the duration of mortgage liens, the action would not be barred although the statute expired during the pendency of the action. The Court stated: "We find it also settled that the status of the lien and the effect of the statute are determined at the time of the commencement of a proper action to foreclose the lien or renew its period of activity."

Appellant argues that the foregoing decisions relating to judgments are not controlling because the duration of the lien of a judgment is now definitely fixed by statute, and seek to distinguish the case of *Robinson v. Watson et al., supra,* upon the ground that the statute involved only cre-

ated, on lapse of the stated time, a presumption of payment and prescribed the form and substance of evidence necessary to rebut such presumption.

The question just mentioned is an interesting and important one which need not now be determined. We shall assume for the purpose of this discussion that if prior to the expiration of the lien of respondent's judgment, an action had been commenced to sell the property for the purpose of satisfying this judgment or if there had been a levy under execution, such action would have preserved the lien of said judgment even though the period fixed by statute expired during the pendency of the proceeding. On this assumption, the inquiry is whether the pendency of the foreclosure proceedings in the instant case had the same effect.

In the answer of Jones, as administrator, it was only sought to have the priority of this judgment lien determined and the proceeds from the sale of the property distributed among the parties according to the priority of the liens. This defendant did not seek to invoke the power of the court to foreclose the lien of his judgment. He was apparently content to let matters stand as they were and only sought to assert his rights in the proceeds of sale in the event the property was sold at the instance of the mortgagees. No affirmative relief was sought. The answer was purely passive and defensive. It was never served upon the mortgagor, which clearly indicates that this defendant did not regard his answer as seeking affirmative relief against either the mortgagor or his property. The decree of foreclosure rendered on March 21, 1934, was conditional in nature. No sale could be made at the instance of the holder of the first mortgage as long as the stipulated weekly payments were made. The holder of the second mortgage was not affected by this agreement and was given leave to apply for a sale at any time subsequent to October 1, 1934. The judgment creditors were not bound by the agreement made between the mortgagor and the holder of the first mortgage. The decree

of foreclosure did not purport to stay any action by them. The liens of these judgments continued in effect and were not to be effectively foreclosed unless there was a sale under the decree. Jones, as administrator, had a right at any time to apply to the Court for appropriate relief. He could have sought, as his successor in interest is now doing, a sale for the purpose of satisfying his judgment. He could have sought the Court's permission to levy under execution. He did neither. We need not determine what the result should be had appropriate relief been sought and denied. These judgment creditors were charged with notice that the premises might never be sold by the mortgagees under the foreclosure decree. Except for the institution of the proceeding to revive the judgment commenced in October, 1934, no action was taken by the holder of respondent's judgment until 1947, thirteen years after the rendition of the foreclosure decree. In the meantime, the lien of this judgment had expired in 1944. This judgment creditor remained silent and inactive during all of this time. Both mortgages on the premises are now satisfied. Respondent asks that the main action be continued so as to sell the property to satisfy her judgment. The only parties interested in such a proceeding would be respondent and the owner of the premises. It is difficult to see how it can be maintained when no affirmative relief was ever sought during the life of respondent's judgment and the answer filed in the foreclosure proceedings was never served on Slater, the mortgagor. In *Adams v. Richardson, supra,* and the other cases relied on by respondent, the judgment creditor instituted an action seeking affirmative relief and process was served on the judgment debtor prior to the expiration of the lien.

The precise question before us seems not to have been previously decided by this Court. Our conclusion is supported by the great weight of authority elsewhere. In *Nutt v. Cuming,* 155 N. Y. 309, 49 N. E. 880, a foreclosure action was instituted in October, 1891. The owner of a judg-

ment entered on August 9, 1882, was made a party defendant. The action resulted in the entering of the usual judgment of foreclosure and sale on January 13, 1892, but the sale did not take place until December, 1896. Under the New York statute then in force, a judgment constituted a lien on the real estate of the judgment debtor for a period of ten years. Thus, the lien was in force at the time the foreclosure decree was rendered but had expired before the sale was held. A contest arose between the owner of the equity of redemption and the judgment creditor over the right to the surplus remaining after the mortgage indebtedness was paid. The Court held that the rights of the parties should be determined as of the time of the sale and not as of the date of the foreclosure decree, and denied the claim of the judgment creditor to the surplus. The Court pointed out that the judgment creditor could have sold the property under execution at any time prior to the sale under the foreclosure decree. In a vigorous dissenting opinion, the view was expressed that the rights of the parties were fixed as of the time of the entry of the foreclosure decree and that the statutory limitation governing the lien of a judgment referred only to land as such and not to surplus money. There were much stronger reasons for supporting the claim of the judgment creditor in that case than appear in the instant case. There the judgment creditor's lien on the property was actually foreclosed by sale. The contest was over the surplus money. Here the mortgagees have never applied for a sale of the premises under the foreclosure decree. It has been suggested by respondent's counsel that under our practice a judgment creditor could not have levied on the property in question after the foreclosure proceedings were commenced. Assuming this to be true, there can be no doubt of the right of respondent to have applied for a sale of the premises or to have sought permission of the Court to levy under execution.

In *Savings & Trust Co. v. Bear Valley Irr. Co. et al., supra,* C. C., 89 F. 32, it was sought to enforce the lien of a judgment after the statutory period of two years had expired upon the ground that during that entire time the property of the judgment debtor was in the hands of receivers appointed by the Court. Relief was denied because during such period the judgment creditors never sought permission of the Court to issue execution. The Court held that the judgment creditors lost their lien through their own neglect in not applying for proper relief.

Respondent argues that her contention is sustained by the Ohio case of *Central Hyde Park Savings & Loan Co. v. Feck et al.,* 77 Ohio App. 343, 67 N. E. (2d) 44. It appears in that case, however, that the judgment creditor filed a cross petition against the mortgagors upon whom presumably said petition was served.

Finally, respondent contends that the question before us is concluded by our holding on the former appeal with respect to the Hughes judgment. It was there held that as long as the mortgagor continued to make the monthly payments provided by the terms of the foreclosure decree, "the mortgagee could not avail himself of any remedy provided by the decree, or by law, and not until default was made could the statute begin to run so as to result in a conclusion of the rights of petitioners." The judgment creditors were not parties to this agreement. As heretofore pointed out, the owner of respondent's judgment was at liberty to apply to the Court at any time for appropriate relief. There is this further distinction between the status of the Hughes judgment and that of the judgment held by respondent. The mortgagor sought and was granted indulgence from Hughes. There is nothing in the record to show that the mortgagor ever sought indulgence from the judgment creditors. It is true that for a long period of time the owner of respondent's judgment made no effort to enforce it which may have resulted in an advantage to the judgment debtor. The motive for not press-

ing the matter, however, may have been to protect the judgment creditor's own interest because he considered that there was no equity in the property above the prior liens. We do not entertain the view, as apparently held by the Court below, that it would be inequitable to permit appellant to derive an advantage from the delay in enforcing the collection of this judgment.

The foregoing conclusion makes it unnecessary to pass upon the other questions raised and discussed.

The judgment of the Court below is reversed and respondent's petition dismissed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.