625 S.E.2d 233

In the Matter of Betsy M. CAMPBELL
and Robert S. Campbell, Jr.

Mary Schuyler CAMPBELL, Respondent,

v.

Betsy M. CAMPBELL and Robert S. Campbell, Jr.,

of whom Betsy M. CAMPBELL is Appellant.

No. 4062.

Court of Appeals of South Carolina.

Heard Nov. 9, 2005.

Decided Dec. 19, 2005.

Withdrawn, Substituted and Refiled Jan. 20, 2006.

Rehearing Denied Jan. 20, 2006.

James R. Thompson and William E. Winter, both of Gaffney and R. David Massey and E. Zachary Horton, both of Greenville, for Appellant.

Randall S. Hiller, of Greenville, for Respondent.

HEARN, C.J.:

This appeal stems from a probate court action in which Mary Schuyler Campbell (Daughter) sought to have herself appointed as conservator of Betsy M. Campbell's (Mother) assets. After appointing two doctors to examine Mother's capacity to handle her own affairs, the probate court denied Daughter's request to be appointed conservator. Daughter appealed to the circuit court, which set the order aside, finding the doctors who examined Mother were not disinterested. We affirm.

### FACTS

On February 28, 2002, Daughter filed a petition seeking to be appointed conservator of Mother's assets. According to Daughter, Mother's assets exceeded sixty million dollars, and Mother needed a conservator because she "is no longer mentally capable of caring for [herself] or [her] assets due to Alzheimer disease and/or dementia and [her] assets are being given away to others who are exerting undue influence over [her]." Mother filed an answer, denying her need for a conservator and arguing that in the event she needed a conservator, William W. Brown would have priority over her daughter because he is her attorney in fact.

After filing her petition, Daughter sent a discovery request to Mother, seeking copies of all of Mother's financial transactions from 1999 to 2002, all of Mother's income tax returns from 1999 to 2002, copies of any documents evidencing the transfer of property from Mother to William W. Brown, and all documents evidencing personal property owned by Mother. In response to this request, Mother sent Daughter a copy of a deed, showing Mother had transferred a condominium to Brown for the sum of ten dollars. Other than this deed, Mother refused to comply with Daughter's discovery requests, arguing they were not only overly broad, but also irrelevant because Daughter had not made a prima facie showing of Mother's incompetence.

Because Mother had not fully complied with the discovery request, Daughter filed a motion seeking to compel produc-

tion. On July 9, 2002, the probate court had a hearing on the motion. After denying Daughter's motion, the probate court directed Mother's counsel to prepare the order. Counsel complied, and the court signed the order on August 12, 2002. That same day, the probate court also executed an order appointing Dr. Preston Edwards and Dr. John Cathcart as examiners for Mother. Mother had previously designated these very doctors as her expert witnesses.

Daughter argued the doctors were appointed without her input, and she did not learn of their appointment until she received the order, which was sent to her by Mother's counsel rather than by the court. By the time Daughter received the order, arrangements had already been made with the doctors to fly them via private jet to Mother's home in Florida. Mother paid the doctors about $2,000 each for their time and also paid for the cost of their transportation. Brown accompanied the doctors during much of their trip.

Upon learning of the doctors' appointment, Daughter filed a motion to reconsider both the probate court's order denying her motion to compel discovery and its order appointing examiners. The probate court held a hearing on the motions, and at the end of the hearing, Daughter moved that the probate judge recuse himself from the case. Both the motion to reconsider and the motion to recuse were denied.

After denying Daughter's motions, the probate court proceeded to hear the matter on its merits. At the hearing, the doctors each testified that they spent an afternoon with Mother and found her to be completely competent to handle her own financial affairs. In an affidavit he submitted to the court, Dr. Cathcart admitted to being a friend of Mother's for over sixty years, attending her husband's most recent birthday party, and having supper with Mother four months prior to examining her. According to Dr. Edwards' affidavit, he had also eaten supper with Mother four months prior to examining her and before that, she had occasionally consulted him from 1950 to 1995 if she was having medical problems.

Based on the doctors' affidavits and their testimony at the hearing, the probate court found Mother to be mentally competent and therefore capable of handling her own finances.

Accordingly, the probate court found there was no need to appoint a conservator for Mother's assets.

Daughter appealed to the circuit court, arguing among other things, that: (1) the order appointing examiners resulted from improper ex parte communications, (2) the probate court erred in appointing the doctors who were not disinterested parties, (3) the probate court judge erred in not recusing himself, and (4) the probate court erred in finding Mother was mentally competent. The circuit court set aside the probate court's order, finding the probate court abused its discretion in naming Drs. Cathcart and Edwards as examiners when Mother had previously designated them as expert witnesses on her behalf. The circuit court also found the probate judge's order and the personal comments he directed at Daughter's counsel demonstrated an improper prejudice against Daughter's case, and therefore, the circuit court recused the probate judge from the case. Because the probate judge who had heard the case was the only probate judge in Cherokee County, the circuit court ordered the case be transferred to Spartanburg County Probate Court. Mother appeals.

## LAW/ANALYSIS

Mother argues the circuit court erred in finding the probate court's appointment of Drs. Cathcart and Edwards was an abuse of discretion.[1] We disagree.

According to section 62–5–401 of the South Carolina Code (1987), the probate court may appoint a conservator to the estate and affairs of a person if the court determines: (1) the person is unable to manage his or her affairs due to advanced age or mental deficiency, and (2) the person has property that will be wasted unless proper management is provided. To aid the court in determining whether a person lacks the mental capacity to handle his or her own affairs, section 62–5–407(b) requires the person "be examined by one or more physicians

---

1. Mother also argues the circuit court erred in recusing the probate judge from further participation in this matter. However, Mother concedes this issue has been rendered moot because the probate judge passed away during the pendency of this appeal. Therefore, we need not address the issue. However, we note that nothing in our opinion hinders Mother from seeking to transfer venue from the Spartanburg County Probate Court back to Cherokee County.

designated by the court, preferably physicians who are not connected with any institution in which the person is a patient or is detained."

Mother argues the physicians appointed by the probate court were sufficient despite the fact she had previously designated them as her experts because the probate code does not restrict examiners to "disinterested" physicians. Mother points out that the statute merely states a preference for examiners who are not connected with an institution in which the person is a patient or is detained, neither of which are present in this case as Mother is not a patient in any institution.

While the statute does not specifically address whether a physician must be "disinterested" or not, the obvious purpose of appointing examiners is to provide the probate court with a medical opinion regarding the person's mental capacity, and it is inherent that such an opinion come from a neutral physician. The statute's preference that the physician be independent from institutions in which the person is a patient evidences the Legislature's desire for neutrality. Furthermore, in other court proceedings in which the trial court receives information from an intermediary, independence is required. *See, e.g., Doe v. Ward Law Firm,* 353 S.C. 509, 519, 579 S.E.2d 303, 308 (2003) (holding that it was in an adopted child's best interests to appoint an intermediary to review law firm's adoption file for information relating to child's physical and psychological problems, and requiring intermediary to be independent of any party to the suit); *Wrenn v. Wrenn,* 228 S.C. 588, 591, 91 S.E.2d 267, 268 (1956) (modifying trial court's order dissolving partnership and remanding case for a "competent, disinterested and impartial person" to be appointed as receiver).

Here, Mother had previously designated Drs. Cathcart and Edwards as experts. Thus, it was a foregone conclusion those doctors would opine Mother was capable of handling her own financial affairs. By appointing such doctors to aid the court in determining Mother's mental capacity, the probate court merely went through the motions of following section 62–5–407. Such a charade was not what the General Assembly intended in enacting the probate code. We therefore find the

214

probate court erred by appointing Drs. Cathcart and Edwards as examiners. Because this error impacted the probate court's subsequent order finding Mother was not in need of a conservator, the circuit court was correct to set that order aside as well. Accordingly, the order of the circuit court is

**AFFIRMED.**

HUFF and BEATTY, JJ., concur.