666 S.E.2d 908

**In the Matter of Betsy M. CAMPBELL
and Robert S. Campbell, Jr.,**

**Mary Schuyler Campbell, Respondent,**

v.

**Betsy M. Campbell and Robert S. Campbell, Jr.,
of whom Betsy M. Campbell is Petitioner.**

No. 26540.

Supreme Court of South Carolina.

Heard June 12, 2008.

Decided Sept. 8, 2008.

R. David Massey and E. Zachary Horton, both of Brown Massey Evans McLeod & Haynsworth, of Greenville, James R. Thompson, of Saint–Amand Thompson & Brown, of Gaffney, and William E. Winter, Jr., of Winter & Rhoden, of Gaffney, for Petitioner.

Randall Scott Hiller, of Greenville, for Respondent.

Chief Justice TOAL.

This Court granted Petitioner Betsy M. Campbell's (Mother) petition to review a court of appeals decision setting aside a probate court order appointing two examiners to evaluate Mother's mental competency in a conservatorship proceeding brought by her daughter, Respondent Mary Schuyler Campbell (Daughter). We affirm the decision of the court of

appeals as modified in accordance with our interpretation of the statute governing the appointment of examiners in conservatorship proceedings.

## FACTUAL/PROCEDURAL BACKGROUND

Daughter petitioned to have herself appointed as conservator of Mother's assets before the probate court for Cherokee County, claiming that (1) Mother was no longer mentally capable of caring for herself or her assets due to dementia, and (2) Mother's assets were being reduced due to undue influence over Mother by her financial advisor William W. Brown (Brown).[1] Mother filed an answer denying the need for the appointment of a conservator and arguing that if the court determined she needed a conservator, Brown had priority to assume the role as her attorney in fact.

In April 2002, Mother listed Dr. John Cathcart and Dr. Preston Edwards to testify at the conservatorship proceeding as expert witnesses on her behalf. Drs. Cathcart and Edwards were both lifelong personal friends of Mother, and Dr. Edwards had occasionally seen Mother for medical reasons over a period of nearly fifty years when Mother primarily resided in Gaffney. Shortly after being designated as expert witnesses, Mother invited each of the doctors and their wives to dinner while she was in Greenville on other matters. Although the doctors were family friends of Mother, their respective social outings with her at this time were also for purposes of observation and evaluation of Mother as her expert witnesses. The record reveals that Mother's counsel provided Dr. Edwards with a document entitled "Outline of Testimony" summarizing what he might be asked at trial as an expert witness. The document was also intended to guide Dr. Edwards in his conversation with Mother at their dinner together, indicated by the document's listing of "discussion of business or financial matters," followed by the exclamation "don't ask if none!"

---

1. Daughter brought the conservatorship proceeding with respect to both her parents, however, the probate court's appointment of examiners at issue in this case only pertains to Mother. Incidentally, Father passed away during the pendency of this appeal.

In August 2002, the probate court ordered the appointment of Drs. Cathcart and Edwards to examine Mother, evaluate her mental competency, and render an opinion to the probate court on the need for the appointment of a conservator pursuant to S.C.Code Ann. § 62–5–407 (1987). Mother does not dispute that the probate court conferred with Mother's counsel during the preparation of the order appointing Drs. Cathcart and Edwards. On the other hand, Daughter was entirely unaware that the probate court was considering an appointment of examiners until Daughter's counsel received a copy of the order from Mother's counsel postmarked two days after the probate court had actually issued the order. Daughter immediately filed a motion to reconsider the appointment on the grounds that Drs. Cathcart and Edwards were not "disinterested parties." The probate court scheduled a hearing for October.

Prior to the probate court's appointment of examiners, however, arrangements had already been made for Drs. Cathcart and Edwards to evaluate Mother, and therefore, only seven days after the court's appointment, a privately chartered jet flew Drs. Cathcart and Edwards, accompanied by Brown, to see Mother at her current residence in Florida. The doctors each testified that they met with Mother's Florida psychiatrist, visited with Mother and Father during the afternoon, and flew back by the same private jet that same evening. Each doctor was compensated $2,000.00.

At the October hearing, the probate court determined that § 62–5–407 did not require the appointed examiners to be disinterested and that the doctors were "well know[n] to this Court as outstanding physicians and as qualified to act as the Court-appointed examiners in the matter." Therefore, the probate court denied Daughter's motion to reconsider the appointment of Drs. Cathcart and Edwards.

At the same hearing, Daughter moved for recusal after the probate judge directed unfavorable personal comments at Daughter's counsel. Daughter additionally based her motion for recusal on the ex parte communications with Mother's counsel prior to the appointment of mental health examiners. The probate court denied the motion and proceeded to a

hearing on the merits of Daughter's petition to appoint a conservator.

The only evidence presented as to the merits of Daughter's petition was the testimony of Drs. Cathcart and Edwards.[2] The doctors testified that they did not perform any medical or psychological examinations of Mother, however both were confident in their findings that Mother was competent to handle her financial affairs based on their personal friendship with Mother, their informal dinner with Mother in April 2002, communication with Mother's Florida psychiatrist, and the August 2002 visit with Mother in Florida. The probate court therefore dismissed Daughter's petition for appointment of a conservator.

Daughter appealed the probate court's orders to the circuit court, alleging that the probate court erred in (1) appointing examiners that were the product of ex parte communications; (2) appointing examiners that were not disinterested parties; (3) failing to grant Daughter's motion for recusal; and (4) finding Mother mentally competent. The circuit court set aside the probate court's order appointing the examiners, finding that § 62–5–407 implicitly required court-appointed examiners to be disinterested, and that the probate court therefore abused its discretion in naming Drs. Cathcart and Edwards as examiners when Mother had previously designated them as expert witnesses on her behalf. Because of the probate court's error in this regard, the circuit court set aside the probate court's order dismissing Daughter's petition to appoint a conservator. The circuit court also found that the Cherokee County probate judge should have recused himself and therefore transferred the case to Spartanburg County Probate Court.

Mother appealed and the court of appeals affirmed the circuit court's ruling setting aside the probate court's appointment of examiners and order of dismissal. *In the Matter of Campbell*, 367 S.C. 209, 625 S.E.2d 233 (Ct.App.2006). The court did not address the issue of recusal, noting that Mother

---

**2.** Counsel for Daughter explained to the probate court that he was not prepared to proceed with a hearing on the merits because the notice of hearing had given him the impression that the court would only be hearing Daughter's motion to reconsider the appointment of Mother's examiners.

conceded the issue had been rendered moot due to the death of the probate judge during the pendency of the appeal. *Id.* at 212 n. 1, 625 S.E.2d at 235 n. 1.

This Court granted certiorari, and Mother raises the following issue for review:

Did the court of appeals err in affirming the circuit court's order setting aside the probate court's orders based upon a determination that S.C.Code Ann. § 62–5–407 implicitly requires that court-appointed physicians be disinterested?

### STANDARD OF REVIEW

The interpretation of a statute is a question of law for the Court. *Vaughan v. McLeod Regional Med. Ctr.*, 372 S.C. 505, 509, 642 S.E.2d 744, 746 (2007). An appellate court may decide questions of law with no particular deference to the trial court. *Dreher v. Dreher*, 370 S.C. 75, 79, 634 S.E.2d 646, 648 (2006).

### LAW/ANALYSIS

Petitioner argues that the court of appeals erred in interpreting S.C.Code Ann. § 62–5–407 to implicitly require that court-appointed examiners in a conservatorship proceeding be disinterested and independent.

The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *Dreher,* 370 S.C. at 80, 634 S.E.2d at 648. To this end, the words of the statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statutes operation. *Hitachi Data Sys. Corp. v. Leatherman,* 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992). If the language of a statute is unambiguous, then the rules of statutory construction are unnecessary and the court may not impose another meaning. *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000).

Section 62–5–407(b) provides that upon receipt of a petition for appointment of a conservator due to alleged mental deficiency, "the court shall direct that the person to be protected be examined by one or more physicians designated

by the court, preferably physicians who are not connected with any institution in which the person is a patient or is detained."

Initially, we find that the circuit court and the court of appeals erred in interpreting § 62-5-407 to implicitly require that the court-appointed examiner be disinterested. In drafting the provisions governing conservatorship proceedings, the legislature undoubtedly sought to establish a framework within which the probate court could exercise its discretion with the best interests of the allegedly incapacitated person in mind. It would be inconsistent with the subjective theory of "best interests" for the Court to find an overriding requirement that all examiners appointed under § 62-5-407 be completely disinterested parties. In fact, in certain instances of alleged mental incapacity, it may actually be preferable to seek the opinion of a treating physician who is familiar with the patient.

■■ This is not to say, however, that the court of appeals' analysis entirely misses the point. Rather, the primary flaw in the opinion below is that it fails to distinguish between a "disinterested" party and an "unbiased" party. Although the statute does not impose a per se requirement of disinterestedness, basic tenets of justice in our jurisprudence dictate that the appointed examiners must be able to render an objective opinion. As the court of appeals rightly acknowledged, the obvious purpose of the statute permitting the appointment of examiners "is to provide the probate court with a medical opinion regarding the person's mental capacity, and it is inherent that such an opinion come from a neutral physician." *Campbell*, 367 S.C. at 213, 625 S.E.2d at 236. The statute's "preference" for the examiner to be unaffiliated with any institution in which the examinee is a patient lends support to the notion that the legislature intended for the appointed examiner to be unbiased, for presumably, only an unbiased examiner can render an opinion to the probate court that considers the best interests of the allegedly incompetent party.

Accordingly, although the court of appeals erred in interpreting an overriding requirement of disinterestedness into § 62-5-407, we hold that the probate court is nevertheless obligated to appoint neutral and objective examiners and that

failure to do so amounts to an abuse of discretion subject to reversal on appeal.[3]

■ To this end, we hold that the court of appeals was correct in affirming the setting aside of the probate court's appointment of Drs. Cathcart and Edwards. Mother had previously designated the doctors as expert witnesses and it is evident in the record that Mother's counsel had coached them as such prior to their evaluative meetings with Mother. Mother also compensated the doctors for the work they performed as her expert witnesses. In our view, these circumstances illustrate the fundamental incompatibility in assuming a dual role as an expert witness for a party to the litigation *and* as a neutral examiner for the court. Accordingly, we hold that the probate court committed an abuse of discretion in appointing Drs. Cathcart and Edwards as examiners in the conservatorship proceeding.

Additionally, although Mother does not raise to this Court the issue of whether the circuit court erred in recusing the probate judge, we briefly address the circuit court's ruling on the matter because we disagree with the court of appeals' apparent finding that the death of the probate judge during the pendency of the appeal rendered the issue moot.

In our view, the circuit court properly ordered the recusal of the probate judge. In addition to the preparation of an order of appointment that we find was strongly influenced by ex parte contact, the probate judge expressed his own favorable opinions on Mother's counsel and the appointed examiners in open court, while directing disparaging personal remarks at Daughter's counsel. These incidents, in our view, are manifestations of a clear bias on the part of the probate judge, and therefore, we hold that the circuit judge properly ordered the recusal of the probate judge and the transfer of the case from Cherokee County Probate Court to Spartanburg County Probate Court.

---

3. *See Parkman v. Hanna*, 311 S.C. 20, 22, 426 S.E.2d 743, 744 (1992) ("The authority of the Probate Court, derived from the statute and precedent case law, will not be disturbed absent a clear abuse of discretion.").

CONCLUSION

For the foregoing reasons, we affirm as modified the court of appeals' decision setting aside the probate court's order appointing Drs. Cathcart and Edwards as examiners in a conservatorship proceeding. Accordingly, we remand the case to the Spartanburg County Probate Court for further proceedings consistent with this opinion.

MOORE, WALLER, PLEICONES, JJ., and Acting Justice LETITIA H. VERDIN, concur.