703 S.E.2d 499

**The LINDA Mc COMPANY, INC., Respondent,**

**v.**

**James G. SHORE and Jan Shore, Petitioners.**

**No. 26878.**

Supreme Court of South Carolina.

Heard Feb. 16, 2010.

Refiled Dec. 29, 2010.

544

546

John Martin Foster, of Rock Hill, for Petitioners.

James Ross Snell, of Lexington, for Respondent.

Chief Justice TOAL.

In this case, the Court granted James G. Shore and Jan Shore's (Petitioners) request for a writ of certiorari to review the court of appeals' decision in *Linda Mc Company, Inc. v. Shore*, 375 S.C. 432, 653 S.E.2d 279 (Ct.App.2007) affirming the trial court's issuance of an order to execute and levy a judgment against Petitioners. Petitioners have submitted a petition for rehearing which we now deny. Also, this opinion is submitted in place of the opinion previously issued in this case.

## FACTS/PROCEDURAL HISTORY

On December 8, 1994, Petitioners agreed to give The Linda Mc Company, Inc. (Respondent) a judgment by confession as settlement of litigation over unpaid sales commissions. That judgment was entered June 2, 1995,[1] and provided in pertinent part:

1. [Petitioners] confess judgment to [Respondent] in the amount of $110,000.00 and hereby authorize the Clerk of Court for Lancaster County, South Carolina, to enter judgment in favor of [Respondent] against [Petitioners], jointly and severally, for such amount, plus such costs and reasonable attorneys' fees incurred by [Respondent] in enforcing the unconditional guaranty, a copy of which is attached hereto as Exhibit 1 (the "Guaranty"). [Petitioners] further waive the service of any summons and complaint praying for such judgment.

2. [Petitioners] agree that [Respondent] may immediately, by affidavit through its attorneys, set forth the correct

---

1. The judgment was subject to execution and levy until June 2, 2005.

amount of this Judgment by adjusting the amount stated above for any credits previously applied by [Respondent], and that [Respondent] may apply to a court of competent jurisdiction for a judgment against [Petitioners], jointly and severally, in the amount of the total sum due and owing hereunder, plus costs and reasonable attorneys' fees incurred by [Respondent] in enforcing the Guaranty, without further notice to [Petitioners] and without further authority from [Petitioners]; provided, however, that in no event may said sum exceed $110,000.00, plus costs and reasonable attorneys' fees incurred by [Respondent] in enforcing the Guaranty. [Petitioners] authorize the entry of judgment for the amount due and owing as set out in the affidavit, which judgment will continue to bear interest at the highest legal rate permitted by law. The Judgment by Confession is not contingent upon any other considerations or proceedings and the Court is authorized to enter judgment for the amount set forth in the affidavit.

Sometime after the judgment was entered, Petitioners paid Respondent $55,000. On February 20, 2004, Respondent wrote a letter to Petitioners acknowledging an agreement to waive all post-judgment interest if Respondent received the remaining $55,000 before May 7, 2004. Petitioners paid Respondent $26,750 by check dated May 13, 2004.[2]

On July 29, 2004, Respondent filed a petition for supplemental proceedings alleging that Petitioners possessed assets subject to execution on the judgment. Petitioners issued a check to Respondent in the amount of $28,500 on August 3, 2004. On August 9, 2004, the trial court granted Respondent's petition for supplemental proceedings and referred the matter to a special referee.

On October 1, 2004, the special referee conducted a hearing to determine whether Petitioners had any assets that could satisfy the balance of the judgment. Petitioners filed a motion to dismiss under Rule 12(b)(1), SCRCP, alleging the judgment

---

**2.** The sheriff sought to execute on the judgment, but the execution was returned nulla bona. Nulla bona is "[a] form of return by a sheriff or constable upon an execution when the judgment debtor has no seizable property within the jurisdiction." *Black's Law Dictionary* 1172 (9th ed.2009).

was void.   Petitioners' motion was denied and the special referee concluded the judgment was valid and enforceable.

On May 24, 2005, the special referee conducted another hearing at which Petitioners argued the February 20, 2004 agreement was modified by a phone message left by Jan Shore (Jan) to Respondent's attorney such that the parties reached an accord and satisfaction.   Jan testified that on May 13, 2004 she called and left a message on Respondent's attorney's answering machine stating she intended to split the remainder of the balance into two payments and "that if there was any problem with that to please call me." [3]   In that message she also stated she would pay the balance by the end of the next quarter, which would have been July or August. Respondent's attorney testified that he recalled receiving phone calls from Petitioners but did not know what they were about and never called them back.[4]

On June 3, 2005, the special referee issued his report to the circuit court finding Petitioners owed interest outstanding from the entry of the judgment to date, as well as costs and attorneys' fees, and there had been no accord and satisfaction. On that same day, the circuit court issued an order to execute and levy upon assets owned by Petitioners.   Petitioners did not raise the matter of the judgment's expiration in the trial court.

Petitioners appealed to the court of appeals, which held:   (1) the absence of an affidavit did not render the judgment void; (2) because Petitioners did not argue that S.C.Code Ann. § 15–39–30 (2005) deprived the judgment of active energy to the trial court, that issue was not preserved for appellate review;   (3) there was no accord and satisfaction;   and (4) because estoppel was not presented to and ruled upon by the trial court, it was not preserved for appellate review.   *Linda Mc Company, Inc.*, 375 S.C. at 437–42, 653 S.E.2d at 281–84.[5] This appeal followed.

---

**3.**  Under the February 20, 2004 agreement the balance was due on May 7, hence the May 13 partial payment and phone message came after the date the balance was to be paid.

**4.**  He testified that his secretary would check and log his messages, but often did not include the substance of the message.

**5.**  The court of appeals affirmed the circuit court.

ISSUES

I.   Was the entry of the judgment void because Respondent failed to follow the terms of the parties' agreement to fix the amount of the judgment?

II.  Does section 15–39–30 deprive the judgment of active energy?

III. Was there an accord and satisfaction?

IV.  Should Respondent be estopped from arguing that there was no accord agreement because it did not respond to the phone message?

V.   Did the expiration of the judgment render it and any supplemental proceedings to it moot?

VI.  Did the expiration of the judgment deprive the circuit court of jurisdiction to proceed with supplemental proceedings or execution?

VII. Did the court of appeals decision establish an unworkable rule of procedure?

STANDARD OF REVIEW

■■■■ "The question of subject matter jurisdiction is a question of law." *Porter v. Labor Depot,* 372 S.C. 560, 567, 643 S.E.2d 96, 100 (Ct.App.2007) (citations omitted). "The issue of interpretation of a statute is a question of law for the court." *Jeter v. S.C. Dep't of Transp.,* 369 S.C. 433, 438, 633 S.E.2d 143, 146 (2006) (citation omitted). An appellate court may decide questions of law with no particular deference to the trial court. *In re Campbell,* 379 S.C. 593, 599, 666 S.E.2d 908, 911 (2008) (citation omitted).

LAW/ANALYSIS

I.   Terms of the Parties' Agreement

■■■ Petitioners argue Respondent failed to follow the terms of the parties' agreement to fix the amount of the judgment. Thus, its entry was void and the court's actions flowing from that entry are without jurisdiction. We disagree.

■■■ S.C.Code Ann. § 15–35–360 (2005) states:

Before a judgment by confession shall be entered a statement in writing must be made and signed by the defendant and verified by his oath to the following effect:

(1) It must state the amount for which judgment may be entered and authorize the entry of judgment therefor;

(2) If it be for the money due or to become due, it must state concisely the facts out of which it arose and must show that the sum confessed therefor is justly due or to become due; and

(3) If it be for the purpose of securing the plaintiff against a contingent liability, it must state concisely the facts constituting the liability and must show that the sum confessed therefor does not exceed the liability.

Rule 60(b)(4), SCRCP provides the court may relieve a party or his legal representative from a final judgment, order, or proceeding if the judgment is void. "The definition of 'void' under the rule only encompasses judgments from courts which failed to provide proper due process, or judgments from courts which lacked subject matter jurisdiction or personal jurisdiction." *McDaniel v. U.S. Fid. & Guar. Co.*, 324 S.C. 639, 644, 478 S.E.2d 868, 871 (Ct.App.1996) (citations omitted).

Petitioners contend the lack of an affidavit from Respondent setting forth the exact amount due under the judgment renders the judgment void.[6] However, the language pertaining to the affidavit in the judgment is permissive and not mandatory. It states an affidavit setting forth the correct amount of the judgment "may" be submitted by Respondent. The judgment complies with the statutory requirements of section 15–35–360 because it was made in writing, signed by Petitioners, and verified by their oath. Moreover, the lack of an affidavit does not render the judgment void under Rule 60, SCRCP, because the absence of an affidavit has no bearing on the subject matter jurisdiction of the court. Hence, because the judgment satisfies section 15–35–360 and the submission of an affidavit was permissive and not mandatory, the court of appeals correctly held the judgment was not invalid for lack of an affidavit.

---

**6.** Petitioners argue that the judgment required Respondent to submit an affidavit setting forth the exact amount due under the judgment.

## II.  Section 15–39–30

■ Petitioners argue section 15–39–30 deprives the judgment of active energy and execution may not issue thereon because ten years have passed since the entry of the judgment.  We disagree.

The court of appeals held this argument was not presented to the trial court and was therefore not preserved for appellate review.  *Linda Mc Company, Inc.*, 375 S.C. at 438, 653 S.E.2d at 282.  In reaching this conclusion the court of appeals found "our supreme court construes the ten-year time limit on judgments in section 15–39–30 as a statute of limitations."  *Id.* at 440, 653 S.E.2d at 283.  Moreover, the court of appeals noted Petitioners had the opportunity to raise the defense in a motion to amend their pleadings or a motion to alter, amend, or vacate and did not do so.  *Id.* at 439, 653 S.E.2d at 282.  In reaching this conclusion, the court of appeals relied on *LaRosa v. Johnston*, 328 S.C. 293, 493 S.E.2d 100 (Ct.App.1997), in which the debtor did assert the statutory defense as it became available by way of a motion to alter. Because the issue was preserved in that case, the court of appeals reversed the court below and held the judgment expired seven days before a master's order was filed compelling payment of LaRosa's judgment.  *LaRosa,* 328 S.C. at 297, 493 S.E.2d at 102.  Thus, the judgment expired and could not be enforced.  It is clear from the court of appeals' holding in the present case that if Petitioners had filed a motion to alter, amend, and vacate in the trial court, its decision would have favored Petitioners.  While the proper interpretation of section 15–39–30 will have no impact on the present case's outcome because Petitioners lost on issue preservation grounds in the court of appeals, it will have an impact on future litigants.

■ Section 15–39–30 states:

Executions may issue upon final judgments or decrees at any time within ten years from the date of the original entry thereof and shall have active energy during such period, without any renewal or renewals thereof, and this whether any return may or may not have been made during such period on such executions.

In *Hardee v. Lynch*, 212 S.C. 6, 46 S.E.2d 179 (1948), this Court dismissed the argument that the statutory period in which an execution may issue served as a statute of limitations, which would be considered waived unless pleaded. The Court in that case stated:

> In order for a law to be a statute of limitations, it must contain within itself a specific statement limiting the time within which an action is to be brought.... [The statute at issue] provides no limitation period, but completely destroys any right of action upon judgments. The logical result of the [statute] was to utterly extinguish a judgment after the expiration of ten years from the date of entry.

*Hardee*, 212 S.C. at 16–17, 46 S.E.2d at 183. Therefore, the court of appeals in this case committed error when it found section 15–39–30 is a statute of limitations.

■ However, the Court in *Hardee* also stated our state's statutes "clearly evince the legislative purpose to nullify the effective force of a judgment after ten years, unless revived, or suit thereon be brought before the expiration of the period allowed by law." *Id.* at 14, 46 S.E.2d at 182; *see also Hughes v. Slater*, 214 S.C. 305, 312, 52 S.E.2d 419, 422 (1949) (indicating filing an action preserves lien even though statutory period expires while the matter is pending). *But see Garrison v. Owens*, 258 S.C. 442, 446–47, 189 S.E.2d 31, 33 (1972) ("A judgment lien is purely statutory, its duration as fixed by the legislature may not be prolonged by the courts and the bringing of an action to enforce the lien will not preserve it beyond the time fixed by the statute, if such time expires before the action is tried.").[7] Hence, while section 15–39–30 is not a statute of limitations, it operates like a statute of limitations under the facts presented here. We want to stress that this is a narrow holding limited to facts similar to those at issue in this case. Hence, when a party has complied with the applicable statutes, as Respondent did in this case, and is merely waiting on a court's order regarding execution and levy, the ten year limitation found in section 15–39–30 is extended to when the court finally issues an order. To hold

---

7. The better and more equitable approach is that taken in *Hardee*. The *Garrison* approach produces harsh results for those seeking to enforce judgments.

otherwise would put those trying to enforce their judgments at the mercy of the court system to conclude the matter within the ten-year period.[8]

In this case, the judgment was entered June 2, 1995 and the order was issued June 3, 2005. While the order came after the ten-year period, a petition for supplemental proceedings was filed before the ten-year period expired. Therefore, the judgment had active energy on June 3, 2005 because that order was the result of the supplemental proceedings filed during the ten-year period. This result renders the court of appeals application of issue preservation in this case moot.

■ In conclusion, section 15–39–30 is not a statute of limitations but it does operate similar to one under these factual circumstances. Furthermore, if a party takes action to enforce a judgment within the ten-year statutory period of active energy, the resulting order will be effective even if issued after the ten-year period has expired. Hence, regarding this issue the decision of the court of appeals should be affirmed as modified.

### III. Accord and Satisfaction

■ Petitioner contends the court of appeals erred in affirming the special referee's decision that there was no accord and satisfaction. We disagree.

■ "In an action at law, the appellate court will correct any error of law, but it must affirm the special referee's factual findings unless there is no evidence that reasonably supports those findings." *Roberts v. Gaskins,* 327 S.C. 478, 483, 486 S.E.2d 771, 773 (Ct.App.1997) (citation omitted). The elements of an accord and satisfaction are (1) an agreement between the parties to settle a dispute and (2) the payment of the consideration which supports the agreement. *Historic Charleston Holdings, LLC v. Mallon,* 381 S.C. 417, 430, 673 S.E.2d 448, 455 (2009) (citation omitted). Like any contract, in order to constitute an accord and satisfaction, there must have been a meeting of the minds. *Id.* (citation omitted). "The debtor must intend and make unmistakably

---

**8.** *LaRosa* and *Garrison* are overruled to the extent they are inconsistent with this opinion.

clear that the payment tendered fully satisfies the creditor's demand." *Tremont Const. Co., Inc. v. Dunlap*, 310 S.C. 180, 182, 425 S.E.2d 792, 793 (Ct.App.1992) (citation omitted). "Without an agreement to discharge the obligation there can be no accord, and without an accord there can be no satisfaction." *Id.* (citation omitted).

Petitioners argue that due to Jan's phone messages to counsel for Respondent, Respondent was aware of Petitioners' proposal to modify the accord agreement, and by not responding, Respondent accepted that proposal allowing for the remaining payment to be late. The special referee found there was never a meeting of the minds such that an accord and satisfaction occurred. Moreover, the special referee found Petitioners did not comply with the terms of the February 20, 2004 agreement because payment of the outstanding balance came after the date called for in the agreement. The court of appeals correctly affirmed the special referee's decision because there was never a meeting of the minds regarding the alleged modification of the February 20 agreement. It was never unmistakably clear that the late payment and telephone message left to Respondent's attorney modified the agreement. Because there is evidence to support the special referee's finding, the court of appeals correctly affirmed the special referee.

## IV. Estoppel

Petitioners argue Respondent should be estopped from denying a modification of the agreement took place. This issue has not been preserved for review.

Petitioners contend Respondent had a duty to respond to Jan's phone message, and by not responding they are now estopped from denying a modification of the agreement. The court of appeals found this argument was neither presented to nor addressed by the trial court and thus not preserved for appellate review. *See In re Michael H.*, 360 S.C. 540, 546, 602 S.E.2d 729, 732 (2004) ("In order to preserve an issue for appeal, it must be raised to and ruled upon by the trial court."); *Lucas v. Rawl Family Ltd. P'ship*, 359 S.C. 505, 510–11, 598 S.E.2d 712, 715 (2004) ("It is well settled that, but for a very few exceptional circumstances, an appellate court cannot address an issue unless it was raised to and ruled upon

by the trial court."). The court of appeals correctly held this issue is not preserved for appellate review because it was not raised to and ruled upon below.

## V. Mootness

Petitioners contend the expiration of the judgment renders it and any proceedings supplemental to it moot. We disagree.

"An appellate court will not pass on moot and academic questions or make an adjudication where there remains no actual controversy." *Curtis v. State*, 345 S.C. 557, 567, 549 S.E.2d 591, 596 (2001) (citation omitted). "Moot appeals differ from unripe appeals in that moot appeals result when intervening events render a case nonjusticiable." *Id.* (citation omitted). " 'A case becomes moot when judgment, if rendered, will have no practical legal effect upon [the] existing controversy. This is true when some event occurs making it impossible for [the] reviewing Court to grant effectual relief.' " *Id.* at 567–68, 549 S.E.2d at 596 (quoting *Mathis v. S.C. State Highway Dep't*, 260 S.C. 344, 346, 195 S.E.2d 713, 715 (1973)).

Petitioners argue an actual controversy ceased to exist upon the expiration of the statutory period making the case moot. Even if this Court agreed with Petitioners' interpretation of section 15–39–30, there would still be a dispute regarding issue preservation. Nonetheless, there is an actual controversy between the parties and expiration of the ten-year time limit did nothing to extinguish that controversy or render this Court unable to grant effectual relief.

## VI. Subject Matter Jurisdiction

Petitioners argue the expiration of the judgment deprived the circuit court of jurisdiction to proceed with either the supplemental proceedings or execution. We disagree.

"Subject matter jurisdiction is 'the power to hear and determine cases of the general class to which the proceedings in question belong.' " *Dove v. Gold Kist, Inc.*, 314 S.C. 235, 237–38, 442 S.E.2d 598, 600 (1994) (quoting *Bank of Babylon v. Quirk*, 192 Conn. 447, 472 A.2d 21, 22 (1984)). The issue of subject matter jurisdiction may be raised at any time including when raised for the first time to an appellate court. *See*

*Tatnall v. Gardner,* 350 S.C. 135, 137, 564 S.E.2d 377, 378 (Ct.App.2002).

Even if this Court were to hold that the expiration of the judgment foreclosed Respondent's ability to enforce the judgment, it would not affect the subject matter jurisdiction of the circuit court to hear the dispute. The running of the ten-year period does not influence the power of the circuit court to hear disputes related to section 15–39–30.

### VII. Unworkable Rule of Procedure

Petitioner argues the effect of the court of appeals decision is to establish an unworkable rule of procedure. This issue has not been preserved for review.

An argument not made to an intermediate appellate court and ruled on by that court is not preserved for review in this Court. *See City of Columbia v. Ervin,* 330 S.C. 516, 519–20, 500 S.E.2d 483, 485 (1998). Because this issue was not presented to the court of appeals, it is not preserved for our review.

#### CONCLUSION

For the aforementioned reasons, the decision of the court of appeals is affirmed as modified.

Acting Justices JAMES E. MOORE and JOHN H. WALLER, JR., concur. BEATTY, J., concurring in part, dissenting in part in a separate opinion. PLEICONES, J., dissenting in a separate opinion.

Justice BEATTY.

While I concur in parts I, III, IV, V, VI, and VII of the majority opinion, I disagree with the majority's analysis in part II dealing with the import and interpretation of section 15–39–30. The majority is correct in concluding that section 15–39–30 is not a statute of limitation. In my view, the majority is incorrect in concluding that it operates similar to one under the facts of this case.

Section 15–39–30 is not a statute of limitation, but it is clearly a statute of repose. There is a significant difference between the two. A statute of limitation is an affirmative

defense that allows a party to avoid suit. A statute of limitation has no effect on the validity of the claim; it only effects the claim's enforcement. In contrast, a statute of repose is not a claim-avoidance mechanism. Instead, a statute of repose extinguishes the claim, in this case the judgment. As we have stated:

> A statute of limitations is a procedural device that operates as a defense to limit the remedy available from an existing cause of action. A statute of repose creates a substantive right in those protected to be free from liability after a legislatively determined period of time. *Langley v. Pierce*, 313 S.C. 401, 403–04, 438 S.E.2d 242, 243 (1993). **A statute of repose is typically an absolute time limit beyond which liability no longer exists and is not tolled for any reason because to do so would upset the economic balance struck by the legislative body.** *Id.* at 404, 438 S.E.2d at 243.

*Capco of Summerville, Inc. v. J.H. Gayle Constr. Co.*, 368 S.C. 137, 142, 628 S.E.2d 38, 41 (2006) (emphasis added); *Harrison v. Bevilacqua*, 354 S.C. 129, 138, 580 S.E.2d 109, 113–14 (2003).

This Court has repeatedly stated that a statute of repose is not tolled for any reason. *Langley v. Pierce*, 313 S.C. 401, 404, 438 S.E.2d 242, 243 (1993); *Capco*, 368 S.C. at 142, 628 S.E.2d at 41. Therefore, in my view, the majority's reliance on *Hardee v. Lynch*, 212 S.C. 6, 46 S.E.2d 179 (1948) and *Hughes v. Slater*, 214 S.C. 305, 52 S.E.2d 419 (1949) is misplaced. Neither case supports extending the life of a judgment after the expiration of the statute of repose. Furthermore, the majority's reference to language in *Hardee* stating that our state's statutes "clearly evince a legislative purpose to nullify the effective force of a judgment after ten years, unless revived, or suit thereon be brought" is taken out of context. *Hardee*, 212 S.C. at 14, 46 S.E.2d at 182. Additionally, it ignores the fact that the statutory scheme referred to in *Hardee* has been repealed and its obsolescence acknowledged by the *Hardee* court. *Id.* at 13, 46 S.E.2d at 182. The *Hardee* court was referring to the way judgments were treated prior to the change in the law. Although the judgment in *Hardee* was more than ten years old, the applicable law affecting the judgment allowed the judgment to be revived for another ten years if suit was brought. After the expiration of

twenty years, there was a presumption of payment. This presumption of payment was effective unless the judgment creditor brought suit prior to the expiration of the twenty-year period. *Id.* at 12, 46 S.E.2d at 181. The law, however, subsequently changed and eliminated the possibility of suit on the judgment after twenty years. The statute that allowed for the revival of a judgment was also repealed, thus ending the active energy of a judgment after ten years. *Id.* at 13, 46 S.E.2d at 182.

In reaching its conclusion, the *Hardee* court referred to its decision in *United States Rubber Company v. McManus,* 211 S.C. 342, 45 S.E.2d 335 (1947), for an understanding of the effects of Act No. 516 of the Acts of the General Assembly for the year 1946, 44 Statutes at Large, 1436. *Hardee,* 212 S.C. at 13, 46 S.E.2d at 181. In recognizing that Act 516 radically changed the operation and effect of existing statutes governing judgments, the *McManus* court stated:

Prior to the passage of the 1946 Act ... the limitation for bringing an action on a judgment was twenty years, Section 387, subsection 1. Section 743, subsection 1, provided that judgments shall constitute a lien on the real estate of the judgment debtor for ten years from date of entry. And the procedure was set forth in subsections 2, 4, 5, 6 and 7 of Section 743 as to how judgments could be renewed or revived within the period of ten years by the service of a summons upon the judgment debtor. Section 745 permitted an action on a judgment after the lapse of twenty years from the date of its entry.

By Act of the general assembly approved March 22, 1946, 44 Stat. at Large 1436, the legislature repealed subsection 1 of Section 387, thus taking away the right to bring an action upon a judgment within twenty years. The Act likewise repealed subsections 2, 4, 5, 6 and 7 of Section 743 of the Code, which authorized the renewal or revival of judgments within the period of ten years, and also repealed Section 745 of the Code, which permitted an action upon a judgment after a lapse of twenty years from the date of the original entry thereof.

*McManus,* 211 S.C. at 345–46, 45 S.E.2d at 336.

As noted by the *Hardee* court, "[t]he logical result of the 1946 enactment, 44 Stats. 1436, was to utterly extinguish a

judgment after the expiration of ten years from the date of entry." *Hardee,* 212 S.C. at 17, 46 S.E.2d at 183.

The *Hardee* court specifically declined to address the question of what happens when a timely-filed action to enforce a judgment is not concluded prior to the expiration of the ten-year repose period as it was unnecessary to resolve the issue before it. *Hardee,* 212 S.C. at 13, 46 S.E.2d at 182. But, the Court in *Garrison v. Owens,* 258 S.C. 442, 189 S.E.2d 31 (1972), squarely confronted the question and concluded that an action to enforce the lien will not preserve it beyond the time by statute if such time expires before the action is tried. *Id.* at 446–47, 189 S.E.2d at 33 ("A judgment lien is purely statutory, its duration as fixed by the legislature may not be prolonged by the courts and the bringing of an action to enforce the lien will not preserve it beyond the time fixed by the statute, if such time expires before the action is tried."). I believe the *Garrison* court was correct and, thus, I would uphold its decision. If the law is to be changed, it must be done by the Legislature not the Court.

Justice PLEICONES.

I respectfully dissent, and would vacate the Court of Appeals' opinion and the circuit court's "Order to Execute and Levy" filed June 3, 2005. I concur fully in Justice Beatty's analysis of S.C.Code Ann. § 15–39–30 (2005). Moreover, any question whether a judgment can be enforced more than ten years after it was filed is answered conclusively by S.C.Code Ann. § 15–39–130 (2005). This statute provides that the sheriff's or other officer's authority to levy and execute final process ceases when the judgment's "active energy" ends "as provided by law," i.e. ten years after the original entry of judgment. In fact, an officer who fails to return the process at the first regular term of common pleas after the expiration of the judgment is subject to penalties for neglect of duty. S.C.Code Ann. § 15–39–140 (2005).

Since the judgment cannot be enforced by execution and levy after ten years, it is futile to continue court proceedings after that date. Upon the passage of ten years, the judgment is unenforceable as a matter of law, and all process related to it, whether in the courts or in the hands of the sheriff or other

officer, must cease. Such a bright line rule [9] benefits debtors, creditors, and other commercial entities by allowing all interested parties to review the judgment rolls and know with certainty the date upon which a judgment will lose its efficacy.

Since the "Order to Execute and Levy" cannot be performed as the judgment upon which it is predicated has no "active energy," I would vacate both the decision of the Court of Appeals and that order itself.

I respectfully dissent.

---

9. I am unclear as to what action by a debtor can extend a judgment's "active energy." Either the period is extended so "long as a party has taken steps within the ten year period to enforce the judgment" or such an extension is limited to the majority's "narrow holding" and "limited to facts similar to those at issue in this case."